**[ORAL ARGUMENT NOT SCHEDULED]**

**NO. 25-5130**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————————

In re U.S. DOGE Service, *et al.*,

Petitioners.

————————————

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia

————————————

**RESPONSE IN OPPOSITION TO PETITION
FOR A WRIT OF MANDAMUS**

————————————

NIKHEL S. SUS
JONATHAN E. MAIER*
LAUREN C. BINGHAM
JOHN B. HILL*
DONALD K. SHERMAN**
Citizens for Responsibility
and Ethics in Washington
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org

*Application for admission to
D.C. Circuit pending
**Application for admission to
D.C. Circuit forthcoming

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iv

GLOSSARY...................................................................................vi

INTRODUCTION ........................................................................... 1

STATEMENT OF THE CASE .......................................................... 7

I.      Factual Background........................................................... 7

II.     Procedural History............................................................ 9

LEGAL STANDARD ..................................................................... 14

ARGUMENT................................................................................. 14

I.      The government does not have a "clear and indisputable"
        right to relief from the reasonably-scoped
        discovery order ............................................................... 14

        A.     *Cheney* and the separation of powers do not bar the limited
               discovery ordered here................................................ 17

               1.  The government forfeited its separation of
                   powers argument................................................. 17

               2.  *Cheney* only applies to certain units of the Executive Office
                   of the President, and DOGE is
                   not one of them.................................................... 19

               3.  *Cheney* does not apply because the government's litigation
                   conduct triggered the need for limited discovery................ 22

        B.     The district court properly concluded that discovery   is
               necessary to determine whether DOGE exercises substantial
               independent authority................................................ 24

        C.     The district court did not abuse its significant discretion in
               ordering discovery under Rule 56(d). ................................ 29

II.     The government has other adequate means to attain the

    relief it is seeking............................................................. 39

III.   **A writ of mandamus is inappropriate under the circumstances.** ....................................................... 41

**CONCLUSION** ................................................................... 42

**CERTIFICATE OF COMPLIANCE** .................................... 44

**CERTIFICATE OF SERVICE** .............................................. 45

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES** ............................................................................. 46

# TABLE OF AUTHORITIES

## Cases

*AFL-CIO v. Dep't of Lab.*, No. 25-cv-339, 2025 WL 1129202
 (D.D.C. Mar. 19, 2025)……………………………………………...21, 34, 35, 36

*Alexander v. FBI*, 691 F. Supp. 2d 182 (D.D.C. 2010) ...............................3

*Am. Fed. Gov't Emps. v. OPM*, No. 25-cv-1780 (N.D. Cal.) ....................35

*Armstrong v. EOP*, 90 F.3d 553 (D.C. Cir. 1996)...1, 3, 4, 21, 25, 26, 28, 41

*Berkeley v. Home Ins. Co.,* 68 F.3d 1409 (D.C. Cir. 1995) .......................30

*Cheney v. District Court for D.C.,*
 542 U.S. 367 (2004)…………………………………….2, 3, 14, 18, 19, 20, 37

*Citizens for Resp. & Ethics in Wash. v. Off. of Admin.,*
 566 F.3d 219 (D.C. Cir. 2009)………………………...1, 3, 21, 25, 28, 35, 41

*Clinton v. Jones*, 520 U.S. 681 (1997) ......................................................20

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y,*
 185 F. Supp. 3d 26 (D.D.C. 2016)...........................................................21

*Conax Florida Corp. v. United States*, 824 F.2d 1124 (D.C. Cir. 1987)…39

*Convertino v. Dep't of Just.*, 684 F.3d 93 (D.C. Cir. 2012)……….15, 29, 30

*Cotton v. Heyman*, 63 F.3d 1115 (D.C. Cir. 1995)...................................25

*CREW v. Dep't of Homeland Sec.*, 532 F.3d 860 (D.C. Cir. 2008)……..2, 20

*EPIC v. Off. of Homeland Sec.*, No. 02-cv-00620 (D.D.C.) .......................21

*Hall & Assocs. v. Env't Prot. Agency*, 956 F.3d 621
 (D.C. Cir. 2020)………………………………………………………….6, 15

*Hamer v. Neighborhood Hous. Servs. Of Chi.*, 583 U.S. 17 (2017)……….17

iv

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) ................................1, 15

*In re Abbott Lab'ys*, 96 F.4th 371 (3d Cir. 2024) .....................................17

*In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008)................5, 22, 23, 34, 35, 38

*In re Elon Musk*, No. 25-cv-5072 (D.C. Cir.) .....................................40, 42

*In re EOP*, 215 F.3d 20 (D.C. Cir. 2000)......................................16, 24, 40

*In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020)....................................14, 39, 41

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982)....................................34

*Jeffries v. Barr*, 965 F.3d 843 (D.C. Cir. 2020) .................................16, 30

*Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49 (D.C. Cir. 2021) ..............33

*Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108 (D.C. Cir. 2004)......3, 20

*Jud. Watch, Inc. v. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013).......5, 12, 30

*Keepseagle v. Perdue*, 856 F.3d 1039 (D.C. Cir. 2017) ...........................17

*Meyer v. Bush*, 981 F.2d 1288 (D.C. Cir. 1993)...........................20, 21, 28

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)...............................................20

*OMYA, Inc. v. Fed. Energy Regul. Comm'n*, 111 F.3d 179
   (D.C. Cir. 1997)....................................................................18

*Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865
   (D.C. Cir. 2010)....................................................................6, 32

*Richie v. Vilsack*, 287 F.R.D. 103 (D.D.C. 2012)..................................35

*Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038
   (D.C. Cir. 1985)....................................................................28

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971)...................................4, 25

*State of New Mexico v. Musk*, No. 25-cv-429 (D.D.C.)..............................39

*Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002) .......................................31

*Sweetland v. Walters*, 60 F.3d 852 (D.C. Cir. 1995)...........................…...29

*U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19
  (D.C. Cir. 2014) ...................................................................................16

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
  45 F.4th 426 (D.C. Cir. 2022) .............................................................18

**Rules**

Fed. R. Civ. P. 56................................................................................15, 30

**Regulatory Materials**

Exec. Order 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) .............................8

Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025)……..3, 4, 7, 19

Presidential Mem., 90 Fed. Reg. 8247 (Jan. 28, 2025) .............................8

# GLOSSARY

CREW ................... Citizens for Responsibility and Ethics in Washington

DOGE ......................................................... United States DOGE Service

EOP ...................................................... Executive Office of the President

FOIA ........................................................... Freedom of Information Act

FRA................................................................ Federal Records Act

NSC ................................................................ National Security Council

OA.................................................................... Office of Administration

SIG.................................................................. Senior Interagency Group

## INTRODUCTION

The government is not entitled to the "drastic and extraordinary" remedy of mandamus. The district court properly exercised its broad discretion by ordering limited discovery on whether the U.S. DOGE Service ("DOGE")—a new Executive Office of the President ("EOP") component—is subject to the Freedom of Information Act ("FOIA") and the Federal Records Act ("FRA"). Discovery to "shed light on" an EOP unit's "authority and operations" can be "critical" to understanding whether it wields "substantial independent authority" and is "subject to FOIA." *Citizens for Resp. & Ethics in Wash. ("CREW") v. Off. of Admin. ("OA")*, 566 F.3d 219, 225 (D.C. Cir. 2009) (discovery included 1,300 pages of documents and deposition of EOP unit director); *see also Armstrong v. EOP*, 90 F.3d 553, 560 (D.C. Cir. 1996) (citing EOP official's deposition testimony). And "district court[s] [have] much room to shape discovery" on EOP units' agency status. *OA*, 566 F.3d at 224.

These cases alone confirm the government's position is not "*clearly mandated* by statutory authority or case law" and thus cannot satisfy the high bar for mandamus relief. *Illinois v. Ferriero*, 60 F.4th 704, 714(D.C. Cir. 2023) (emphasis added). But the petition also fails for

numerous other reasons.

Most fundamentally, the petition hinges on a mischaracterization of the EOP's structure and the separation powers principles of *Cheney v. District Court for D.C.*, 542 U.S. 367 (2004), which is both erroneous and forfeited because the government never pressed it below. Contrary to this newly-raised argument, *Cheney* does not shield *all* EOP components from discovery. Rather, *Cheney* "safeguard[ed] against unnecessary intrusion into the operation of the *Office of the President*" and the Office of the Vice President. 542 U.S. at 387 (emphasis added). The "discovery request in *Cheney* was directed at the *Vice President himself*[,]" and the "Court explained that '[w]ere the Vice President not a party,'" the outcome may have been different. *CREW v. Dep't of Homeland Sec. ("DHS")*, 532 F.3d 860, 865 (D.C. Cir. 2008) (quoting *Cheney*, 542 U.S. at 381) (emphasis added).

The petition fails to recognize that the "Office of the President" referenced in *Cheney* (also known as the White House Office) is a "distinct" and "smaller unit" of the EOP "comprised of such immediate advisers as the Chief of Staff and the White House Counsel." *Jud.*

*Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1109 n.1 (D.C. Cir. 2004). DOGE is part of the EOP, but it is not part of the White House Office, and its Administrator does not report directly to the President. Exec. Order No. 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025).[1]

The discovery here is not directed at the President, the Vice President, or their immediate staff. A15-28. And it expressly excludes communications with the President. A18. The discovery seeks facts concerning DOGE's control over federal agencies *outside of* the White House, which bear directly on DOGE's agency status under circuit precedent. *See OA*, 566 F.3d at 224; *Armstrong*, 90 F.3d at 560.

Because DOGE and its Administrator are not among "those in closest operational proximity to the President," *Cheney*, 542 U.S. at 381, the discovery here does not implicate *Cheney*. But even if it did, the government forfeited the argument by failing to raise it below. *Compare*

---

[1] The government incorrectly uses "Executive Office of the President" and "Office of the President" (*i.e.*, the White House Office) interchangeably, *see* Pet. 1, even though the latter is only a component of the former. To avoid confusion, CREW only uses "White House Office." *See Alexander v. FBI*, 691 F. Supp. 2d 182, 186 n.1 (D.D.C. 2010) (doing same), *aff'd*, 456 F. App'x 1 (D.C. Cir. 2011).

ADD128 (citing *Cheney* once to support narrowing discovery), *with* Pet. (citing *Cheney* 41 times to block all discovery).

The government also relies on the wrong standard in arguing that discovery is unnecessary to resolve DOGE's agency status. This Court has long applied a functional, not formal, test for determining whether EOP units are subject to FOIA, the Administrative Procedure Act, and other laws designed to check the Executive. *See Soucie v. David*, 448 F.2d 1067, 1071 (D.C. Cir. 1971). That test sensibly examines whether an EOP unit "could exercise substantial independent authority" and "*does in fact* exercise such authority." *Armstrong*, 90 F.3d at 560 (emphasis added). Ignoring this binding precedent, the government pushes for a formalist inquiry. But not only does that contravene settled precedent, it would enable EOP units wielding significant power to evade critical transparency and accountability laws, so long as they do so under cover of broadly-worded executive orders. *See, e.g.*, 90 Fed. Reg. 8441 (empowering DOGE to "implement" an undefined "DOGE Agenda").

The law forbids this charade. The district court reasonably determined—based on the language of relevant executive orders, the

Administration's public statements, and reports of DOGE pervasively controlling federal agencies—that CREW is entitled to limited discovery into DOGE's authority and operations. And the court carefully exercised its significant discretion by narrowing the discovery's scope to highly relevant material. Nothing about that ruling was clearly and indisputably wrong.

Nor does the government have a "clear and indisputable" right to prevent the deposition of Acting DOGE Administrator Amy Gleason. Pet. 13. The government chose to submit two of Gleason's declarations. Her second declaration is DOGE's *only* evidence in support of its summary judgment motion, and the district court found that her testimony was "called into question by contradictory evidence in the record." ADD047 (citing *Jud. Watch, Inc. v. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013)). This Court's post-*Cheney* precedent and basic fairness entitle CREW to depose Gleason "to allow follow-up questioning on facts [DOGE] has itself put in evidence[.]" *In re Cheney*, 544 F.3d 311, 312-14 (D.C. Cir. 2008) (requiring depositions of Vice President's Deputy Chief of Staff and National Archives official "to follow up on factual questions that [they] had put at issue in [their]

5

declarations"). The district court's authorization of Gleason's deposition was plainly correct and, at a minimum, well within its "'broad discretion to manage the scope of discovery' in FOIA cases." *Hall & Assocs. v. Env't Prot. Agency*, 956 F.3d 621, 629 (D.C. Cir. 2020) (citation omitted). In no event did the district court err so grievously to warrant mandamus relief.

The government's privilege objections likewise provide no basis for the extraordinary writ. For starters, they are premature. The discovery order does not compel DOGE to disclose any privileged material. DOGE can assert privilege in the ordinary course and produce a log of its withholdings—just as other EOP components routinely do in discovery and FOIA litigation. *E.g., Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 867 (D.C. Cir. 2010). *Cheney* affords DOGE no special immunity from that standard procedure. Nor is mandamus a proper vehicle for superintending discovery management.

The petition should be denied.

# STATEMENT OF THE CASE

### I.    Factual Background.

On January 20, 2025, President Trump signed Executive Order 14,158, renaming the former United States Digital Service, previously housed in the Office of Management and Budget, the "United States DOGE Service". 90 Fed. Reg. 8441. The EO established DOGE as a freestanding entity in the EOP, headed by an Administrator who reports to the White House Chief of Staff. *Id.* It also established, under 5 U.S.C. § 3161, "a temporary organization known as 'the U.S. DOGE Service Temporary Organization'" within DOGE that is headed by the Administrator and "dedicated to advancing the President's 18-month DOGE agenda." *Id.* "DOGE agenda" is an undefined term used in multiple executive orders.

The EO broadly empowers DOGE "to implement the President's DOGE Agenda, by modernizing Federal technology and software to maximize governmental efficiency and productivity." *Id.* It further requires the installation of "DOGE Teams" at agencies, appointed by each agency head in consultation with the DOGE

Administrator. *Id*. Agency heads are required to "ensure that DOGE Team Leads coordinate their work with [DOGE] and advise their respective Agency Heads on implementing the President's DOGE Agenda." *Id*. Agency Heads must also "take all necessary steps, in coordination with the [DOGE] Administrator and to the maximum extent consistent with law, to ensure [DOGE] has full and prompt access to all unclassified agency records, software systems, and IT systems." *Id*.

A presidential memorandum provides that a government-wide hiring freeze shall remain in effect with respect to the Internal Revenue Service "until the Secretary of the Treasury, in consultation with the Director of OMB and the Administrator of [DOGE], determines that it is in the national interest to lift the freeze." Presidential Mem., 90 Fed. Reg. 8247 (Jan. 28, 2025).

Another executive order empowers "DOGE Team Leads" at each agency to keep vacant career positions across the government, unless an agency head overrides their decision. Exec. Order 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025). It further requires each agency "DOGE Team

Lead" to provide the DOGE Administrator "with a monthly hiring report for the agency." *Id.*

## II. Procedural History.

Immediately after President Trump took office on January 20, 2025, DOGE reportedly began "spearhead[ing] efforts to terminate federal workers, programs, and contracts across the federal government." A3. Public statements by the Administration and extensive reporting indicated the new entity was wielding "unprecedented" control over "vast swathes" of the government at a "remarkably swift[]" pace, and with "unusual secrecy." ADD018, ADD025, ADD033, ADD036.

On January 24, 2025, CREW submitted an expedited FOIA request to DOGE seeking records shedding light on its secretive structure and operations. ADD055-64. Expedited processing was granted on January 29. ADD010-11.

On February 7, CREW requested that DOGE produce the requested documents by March 1 because members of Congress had signaled that DOGE's takeover of federal operations would play a central role in negotiations to fund the government beyond March 14.

CREW PI Mot. Ex. J, ECF No. 2-12. Congress's focus on DOGE increased sharply thereafter. CREW PI Mem. 1-10, ECF No. 2-1.

On February 20, CREW filed its complaint and preliminary injunction motion. The motion detailed DOGE's unprecedented operations and the resulting public outcry. CREW PI Mem. 1-12, 17-38. It argued that DOGE is wielding "substantial independent authority," making it a de facto "agency" subject to FOIA and the FRA. *Id*. at 18-25.

In opposing CREW's preliminary injunction motion, DOGE chose to make only cursory assertions—buried in two footnotes—that it was exempt from FOIA, and insisted that whether FOIA applied to it was "a question for the merits . . . once Defendants have had an opportunity to answer the complaint in the ordinary course" that "should not be decided in the context of a preliminary-injunction motion." PI Opp. 8 n.2, 20 n.4, ECF No. 10. In its reply, CREW narrowed the requests for which it sought relief. CREW PI Reply 6-20, ECF No. 13.

On March 10, the district court issued a preliminary injunction ordering, among other things, expedited processing of CREW's narrowed request to DOGE. PI Order, ECF No. 17. The district court concluded CREW was likely to establish that FOIA applies to DOGE

10

because it "is likely exercising substantial independent authority much greater than other EOP components held to be covered by FOIA." ADD027.

The government sought reconsideration and to stay the preliminary injunction pending resolution of an impending summary judgment motion on DOGE's agency status, which the government claimed could be decided (inclusive of appeals) so quickly it would avert the irreparable injury underlying the injunction. *See* ADD045-46. Only then did the government argue, for the first time, that DOGE does not wield substantial independent authority, *see* ADD043, ADD051, despite acknowledging that this was "an important threshold legal issue" that CREW had briefed "at length in [the] preliminary injunction motion." Defs.' Recon. Mem. at 10-21, ECF No. 20-1.

The reconsideration motion relied on a sworn declaration from Acting DOGE Administrator Amy Gleason attesting that she is a full-time DOGE employee and its Acting Administrator (omitting her start date) and, in conclusory terms, that DOGE does not wield substantial independent authority and merely advises the President. *See generally* ADD065-69.

11

The district court denied that motion because, among other reasons, the government's arguments were ones "it deliberately chose to forego" earlier. ADD043. The district court stated that Gleason's declaration did not establish DOGE's agency status and her assertions about DOGE's operations and her role were "called into question by contradictory evidence in the record." ADD047 (quoting *Jud. Watch, Inc.*, 726 F.3d at 215). The district court twice repeated that it would entertain a Rule 56(d) motion if the government filed its early summary judgment motion, ADD042, ADD052, and previewed that Gleason's "declaration appears to be subject to factual disputes that may provide a basis for CREW to seek discovery under Rule 56(d)," ADD046-47.

The government moved for partial summary judgment later that day, disputing DOGE's agency status. *See generally* Defs.' Summ. J. Mem., ECF No. 24-1. Its only evidence of DOGE's operations was a second Gleason declaration, which repeated her contradicted assertions and revised the description of her role to omit the sworn statement from her first declaration that she was a full-time DOGE employee. *Compare*

ADD065-69 *with* ADD070-74.[2] Gleason's second declaration again contained just two cursory sentences purporting to describe what DOGE actually does. ADD073.

CREW promptly moved for expedited discovery pursuant to Federal Rules of Civil Procedure 56(d) and 26, identifying specific factual issues relating to DOGE's substantial independent authority, including numerous inconsistencies between Gleason's second declaration and the public record. ADD084-90. CREW sought only limited discovery, tailored to determining whether DOGE is exercising substantial independent authority, including deposing Gleason to address her sworn statements.

The district court partially granted CREW's motion, narrowing the written discovery and granting only two depositions, a Rule 30(b)(6) deposition of DOGE and a deposition of Gleason, because (1) "Gleason's declaration is the only factual evidence offered in support

---

[2] Gleason swore in her first declaration that she was a "full-time, government employee at [DOGE]," omitting that she had earlier accepted an appointment at the Department of Health and Human Services. ADD089-90. That only came to light through disclosures— which the government attempted to file under seal—in another case. *Id.*

of USDS's summary judgment motion," and (2) "parts of Gleason's declaration appear to be 'called into question by contradictory evidence in the record.'" A9 (citation omitted).

## LEGAL STANDARD

Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *In re Flynn*, 973 F.3d 74, 78 (D.C. Cir. 2020) (quoting *Cheney*, 542 U.S. at 380). The writ of mandamus should issue only if: (1) "the petitioner satisfies the burden of showing that his right to issuance of the writ is clear and indisputable"; (2) "the party seeking issuance of the writ has no other adequate means to attain the relief he desires"; and (3) "the issuing court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances." *Id.* (cleaned up).

## ARGUMENT

### I.    The government does not have a "clear and indisputable" right to relief from the reasonably-scoped discovery order.

The government comes nowhere close to establishing a clear and indisputable right to relief. "To meet the 'clear and indisputable' requirement, the plaintiff must show that the challenged action is 'plainly and palpably wrong as a matter of law.' 'Accordingly, [this

14

Court] will deny mandamus even if a petitioner's argument, though "packing substantial force," is not clearly mandated by statutory authority or case law.'" *Ferriero*, 60 F.4th at 714-15 (cleaned up).

The district court did nothing "plainly and palpably" wrong. The court soundly exercised its significant discretion by granting limited discovery tailored to address whether DOGE wields sufficient independent authority to make it subject to FOIA—a "threshold" question that the government acknowledged below is both "novel and significant." Defs.' Recon. Mem. 2-3.

"District courts have 'broad discretion to manage the scope of discovery' in FOIA cases," and this Court "will overturn the exercise of that discretion 'only in unusual circumstances.'" *Hall & Assocs.*, 956 F.3d at 629 (citations omitted). That discretion is at its apex where, as here, a party opposing a summary judgment motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d)(2). Rule 56(d) motions "should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence.'" *Convertino v. Dep't of Just.*, 684 F.3d 93, 99 & n.12 (D.C. Cir. 2012)

(citation omitted). And district courts have "significant discretion" in ruling on Rule 56(d) motions. *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 31 (D.C. Cir. 2014). The party challenging Rule 56(d) discovery must show "either a legal error in the District Court's reasoning or a basis for this Court to conclude that the District Court's action was 'arbitrary, fanciful, or clearly unreasonable.'" *Jeffries v. Barr*, 965 F.3d 843, 855-56 (D.C. Cir. 2020) (citation omitted).

Review of a discovery order is even more limited in the mandamus context. "In the normal course, . . . mandamus is not available to review a discovery order. This is especially true when . . . granting such relief 'would permit an application for review of a discovery order to serve in effect as a vehicle for interlocutory review of the underlying merits of the law suit.'" *In re EOP*, 215 F.3d 20, 23 (D.C. Cir. 2000) (citation omitted).

Under this highly deferential framework, the government falls far short of showing any "clear and indisputable" right to relief from the reasonably-scoped discovery order.

16

## A. *Cheney* and the separation of powers do not bar the limited discovery ordered here.

The government's lead argument is that the discovery order violates separation of powers principles under *Cheney*. But *Cheney* does not limit the discovery here for three independent reasons: (1) the government forfeited its *Cheney* argument by failing to raise it below;

a. *Cheney* does not apply to the discovery at issue, which is directed at DOGE, not the President, Vice President, or their immediate staff; and

b. *Cheney* does not apply in this procedural posture, where the government's own litigation conduct triggered the need for discovery.

### 1. The government forfeited its separation of powers argument.

The government forfeited its separation of powers argument by failing to raise it at all in its opposition to CREW's Motion for Expedited Discovery. *See In re Abbott Lab'ys*, 96 F.4th 371, 382-83 (3d Cir. 2024) (holding that where "argument was raised for the first time in the filing of the Petition" for writ of mandamus, "[b]ecause the argument was not raised in the District Court, Petitioners have forfeited it"). "Forfeiture is the failure to make the timely assertion of a right," *Hamer v. Neighborhood Hous. Servs. Of Chi.*, 583 U.S. 17, 20 n.1 (2017) (cleaned up), and applies to constitutional objections, *Keepseagle v. Perdue*, 856

17

F.3d 1039, 1054 (D.C. Cir. 2017). Forfeiture occurs even when an issue is raised below, but in a cursory fashion. *See United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 433-34 (D.C. Cir. 2022); *OMYA, Inc. v. Fed. Energy Regul. Comm'n*, 111 F.3d 179, 181 (D.C. Cir. 1997).

Here, the government failed to make *any* argument regarding the separation of powers in opposing discovery before the district court—not even using the term—and cited *Cheney* only once, for the proposition that it *permitted discovery* so long as it accounted for the "high respect that is owed to the office of the Chief Executive." ADD103 (quoting *Cheney*, 542 U.S. at 385). On this basis, the government acknowledged that *Cheney* permitted at least written discovery. *Id.* In the same discussion, the government further conceded that "*if* the Court concludes that depositions are needed, *Defendants do not object to the Court's approval of a single 30(b)(6) deposition*." ADD103-05 (second emphasis added). These concessions make clear that the government forfeited its (incorrect) argument that *Cheney* prohibits discovery here.

18

**2.** ***Cheney*** **only applies to certain units of the Executive Office of the President, and DOGE is not one of them.**

The government fundamentally mischaracterizes both the EOP's structure and *Cheney*'s scope. Properly understood, *Cheney* has no bearing on the discovery here because it is directed solely at DOGE—not the President, Vice President, or their immediate staff. A15-28. While DOGE is a unit of the EOP, it is not part of the White House Office (or, in *Cheney*'s terms, "the Office of the President"), and DOGE's Administrator does not report directly to the President. 90 Fed. Reg. 8441. DOGE also has its own email domain (@doge.eop.gov), which differs from the White House Office domain (@who.eop.gov). *See* CREW PI Mem. Ex. 1.1, ECF No. 10-2.

These distinctions render *Cheney* inapplicable. *Cheney* sought to "safeguard against unnecessary intrusion into the operation of the *Office of the President*" (*i.e.*, the White House Office), as well as the Office of the Vice President. 542 U.S. at 386-87 (emphasis added). Indeed, the "discovery request in *Cheney* was directed at the *Vice President himself*," and the Court was especially concerned "that forcing *the Vice President* to assert executive privilege in the context of broad

19

discovery requests submitted during civil litigation would set 'coequal branches of the Government . . . on a collision course.'" *DHS*, 532 F.3d at 866 (quoting *Cheney*, 542 U.S. at 389) (emphasis added).

As this Court has recognized, "no such danger exists" where, as here, discovery is sought not from the President, Vice President, or their immediate staff. *Id.*; *see also Cheney*, 542 U.S. at 381 (cautioning that the Court's ruling may have been different "[w]ere the Vice President not a party in the case"). Other cases cited by the government involved damages claims against the *President himself, see Clinton v. Jones*, 520 U.S. 681, 684 (1997); *Nixon v. Fitzgerald*, 457 U.S. 731, 748 (1982), and thus are even less relevant than *Cheney*.

The White House Office holds a unique status based on its proximity to the President that sets it apart from other EOP units, including DOGE. The White House Office is a "distinct" and "smaller unit" of the EOP "comprised of such immediate advisers as the Chief of Staff and the White House Counsel. Although the Executive Office of the President is an agency subject to the FOIA, the [White House Office] is not." *Jud. Watch*, 365 F.3d at 1109 n.1; *see also Meyer v. Bush*,

20

981 F.2d 1288, 1310 & n.2 (D.C. Cir. 1993) (Wald, J., dissenting) (distinguishing the White House Office from the broader EOP).

But EOP units *outside* of the White House Office and Office of the Vice President *can* be subject to FOIA, *e.g.*, Pet. 25, and routinely respond to discovery, *see, e.g.*, *OA*, 566 F.3d at 221, 225-26 (Office of Administration); *Armstrong*, 90 F.3d at 561 (National Security Council); *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 185 F. Supp. 3d 26, 27 (D.D.C. 2016) (Office of Science and Technology Policy); *EPIC v. Off. of Homeland Sec.*, No. 02-cv-00620, ECF No. 11 (D.D.C. Dec. 26, 2002) (Office of Homeland Security). DOGE is similarly situated to these other EOP components. *See AFL-CIO v. Dep't of Lab.*, No. 25-cv-339, 2025 WL 1129202, at *8 n.17 (D.D.C. Mar. 19, 2025) (ordering discovery from DOGE and deeming *Cheney* "readily distinguishable").

Because DOGE is not part of the White House Office or Office of the Vice President, and because the discovery here is not directed at those offices or their immediate staff, *Cheney* does not apply.

21

### 3. *Cheney* does not apply because the government's litigation conduct triggered the need for limited discovery.

This case and *Cheney* are distinguishable in another critical respect: the posture in which the government chose to raise the separation of powers. In *Cheney*, the government promptly raised the defense in a motion to dismiss as a threshold ground for dismissal. 542 U.S. at 376. This Court has thus construed *Cheney* to "stand for the general principle that mandamus may be warranted where valid threshold grounds for dismissal, denied by the district court, would obviate the need for intrusive discovery against the Vice President." *In re Cheney*, 544 F.3d at 313.

Here we are in a far different "litigation posture." *Id.* at 313-14. The government did not raise *Cheney* or the separation of powers as a threshold defense in a motion to dismiss. To the contrary, the government failed to raise the defense *at all* (and thus forfeited it, *supra* Part I.A.1). Meanwhile, it was the *government*'s decision to move for partial summary judgment and introduce contradictory evidence on DOGE's agency status that triggered the need for limited discovery.

22

This case's posture is materially identical to *In re Cheney*, where this Court refused to categorically apply *Cheney* and the separation of powers "to vacate [a] district court's discovery order as an 'unprecedented' intrusion." 544 F.3d at 312. There, as here, the government did not file a motion to dismiss or raise any threshold legal defenses. *Id.* at 313. Instead, in both cases the government chose to submit evidence to support a factual argument that it was complying with federal law (the Presidential Records Act in *In re Cheney* and FOIA here). *See id.* at 312. Further, as here, the government waited until *after* the district court ordered discovery to "argue that the entire factual inquiry—which *it* raised—should be set aside in view of" its interpretation of precedent. *Id.* at 313. And in both this case and *In re Cheney*, the district court held that this "litigation posture necessitate[d] limited discovery to permit timely adjudication of the factual defense" that the government "has itself raised." *Id.* at 314.

This Court should follow the same path it did in *In re Cheney*: hold that *Cheney* does not prohibit discovery because of "the procedural record in the district court" and "the deference [this Court] owe[s] trial courts in the management of their cases." *Id.* at 313 (citation omitted).

23

**B.    The district court properly concluded that discovery is necessary to determine whether DOGE exercises substantial independent authority.**

The government's effort to quash the discovery order is both an improper use of mandamus and contrary to every case on an EOP component's agency status cited by the parties. The government seeks to overturn a half century of precedent, nullify Rule 56(d), and compel the district court to abdicate its discretion over discovery and decide the government's summary judgment motion with its eyes closed to how DOGE actually operates. The discovery order was both necessary and narrowly tailored to properly evaluate DOGE's agency status.

Mandamus review of a "discovery order" cannot be used as "a vehicle for interlocutory review of the underlying merits of the lawsuit." *In re EOP*, 215 F.3d at 23 (citation omitted). Thus, the government's petition is not a proper vehicle to litigate the "underlying merits" question of whether DOGE wields substantial independent authority and thus is subject to FOIA. *See generally* Pet. (repeatedly claiming DOGE is a purely "advisory body"). The question, instead, is whether the district court clearly and indisputably erred in *granting discovery* on that question. It did not.

For decades, "[i]n determining whether an entity fits the agency definition under FOIA," this Court has "generally employed a fact-specific functional approach" which was "first employed . . . in *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971)." *Cotton v. Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995). Since *Soucie* first required the "review [of] the origin *and functions*" of EOP components when evaluating their substantial independent authority, 448 F.2d at 1071 (emphasis added), this Court has consistently reaffirmed *Soucie*'s functional approach (including in cases cited by the government). *See OA*, 566 F.3d at 224-25; *Armstrong*, 90 F.3d at 560-61. The government wrongly asserts that "the Court has repeatedly answered that question solely by examining the formal authorities—like executive orders, statutes, or charter documents—that created the entity and set out its duties and responsibilities." Pet. 22. This Court's decisions do not countenance that approach, let alone require any Court to accept as fact DOGE's bare assertions that it is a mere advisory entity.

In *OA*, for example, the Court described the question presented as "whether a unit is, *in fact*, an agency subject to FOIA." 566 F.3d at 225 ((emphasis added). To answer, the Court looked not only

at OA's charter documents, but also analyzed "everything the Office of Administration does," *id.* at 224, because "an understanding" of OA's "authority *and operations* . . . [wa]s critical for determining whether OA is subject to FOIA." *Id.* at 225 (emphasis added). The Court concluded OA was not subject to FOIA because "nothing in the record indicate[d] that OA [1] *performs* or [2] is authorized to perform tasks other than operational and administrative support for the President and his staff." *Id.* (emphasis added). By distinguishing between the tasks OA was authorized to perform according to its charter documents and the tasks OA actually performed, the Court demonstrated that the substantial independence test goes beyond just the charter documents.

Similarly, in *Armstrong*, the Court evaluated whether the National Security Council ("NSC") was a FOIA agency by examining both whether it "could exercise substantial independent authority" *and* "*does in fact* exercise such authority." 90 F.3d at 560 (emphasis added). The Court considered numerous facts relating to the NSC's actual operations, including the extent to which the National Security Adviser works closely with the President and controls NSC staff, whether "the record suggest[ed] that the President has empowered the NSC staff to

direct the [Director of Central Intelligence] in any way," and a staff member's testimony regarding his "ability to issue instructions or directions to agencies" and how he conveyed decisions to them. *Id.* at 560-61.

The Court also examined how ambiguous delegations of authority to NSC were implemented. For example, although the plaintiff claimed that an executive order gave the NSC authority to resolve "disputes between agencies concerning the protection and declassification of classified information," the NSC's declassification reviews were in practice "really nothing more than the internal management of the information that the NSC generates in advising the President." *Id.* at 561-62. In fact, the Court refused to credit another directive creating the Senior Interagency Group ("SIG") because, although the directive authorized the SIG to "oversee the implementation of the goals and principles," there was "nothing before [the Court] to confirm that the SIG *in fact* oversees anything or anyone." *Id.* at 563 (emphasis added).

The government ignores these cases and cites others to argue that the district court was duty-bound to consider only DOGE's charter

27

documents, but those cases confirm the propriety of the order. *See* Pet. 22.

The government first relies on an inversion of *Meyer,* 981 F.2d 1288, a case cited in *OA,* 566 F.3d at 222-23, and *Armstrong*, 90 F.3d at 558-61. *Meyer* reviewed whether the Task Force on Regulatory Relief was a FOIA agency by looking beyond the Executive Order creating it and analyzing its operations *in fact*, determining there was "no indication that [it] directed anyone, including OMB, to do anything." 981 F.2d at 1294. Reaffirming its functionalist approach, the Court underscored that the Task Force was not independent, because, among other things, "the Task Force operated out of the Vice President's office without a separate staff[.]" *Id.* at 1296.

Next, the government cites *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038 (D.C. Cir. 1985), where the Court examined whether the Council of Economic Advisors was a FOIA agency by analyzing its "functional roles" under *Soucie*, *id.* at 1041, ultimately determining that its charter did not support "any function save that of advising and assisting the President" *and* no evidence has "been brought forward to

28

show that some other function *in fact exists*." *Id.* at 1043 (emphasis added).

Similarly, in *Sweetland v. Walters*, 60 F.3d 852 (D.C. Cir. 1995) (per curiam), the Court examined whether the Executive Residence was a FOIA agency by relying on a "catalogue of the Residence staff's *functions*" from a Report of the Senate Appropriations Committee and not merely accepting the U.S. code description of "certain employees of the Executive Residence['s] duties." *Id.* at 853-54. Each of these cases undermines—rather than supports—the government's position.

### C.   The district court did not abuse its significant discretion in ordering discovery under Rule 56(d).

The government argues that some of the discovery is so overbroad and burdensome that mandamus is justified. Not so. Because "summary judgment is premature unless all parties have 'had a full opportunity to conduct discovery,'" this Court directs that 56(d) motions "should be granted 'almost as a matter of course unless that non-moving party has not diligently pursued discovery of evidence'" *Convertino*, 684 F.3d at 99 (discussing Rule 56(d)'s precursor, Rule 56(f)) (cleaned up). The government's exaggerated objections fail to meet its normal burden to establish that the discovery order was "arbitrary, fanciful, or clearly

unreasonable," *Jeffries*, 965 F.3d at 855 (citation omitted), much less the higher bar for mandamus relief.

The petition omits all but a single reference to Rule 56(d), but the procedural history of this case makes clear: the discovery order was a direct and foreseeable consequence of the government's litigation strategy. *Supra* pp. 10-13, Part I.A.3. Under these circumstances the district court would have abused its discretion if it did *not* order discovery pursuant to Rule 56(d) and this Court's binding precedent on both the equitable determination of summary judgment motions; *see* Fed. R. Civ. P. 56(d); *Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C. Cir. 1995); *Convertino*, 684 F.3d at 99-100; *see also Jud.Watch*, 726 F.3d at 215; and the fact-intensive nature of determining EOP components' agency status, *supra* Part II.B.

The district court recognized this Circuit has "permitted limited discovery in just these circumstances—to ascertain whether an entity is wielding independent authority sufficient to bring it within FOIA's ambit." A5 (collecting cases). Because "[t]he structure of [an agency] and the scope of its authority are critical to determining whether the agency is 'wielding substantial authority independently of the President,'" and

30

"the answers to those questions are unclear from the record," A6, the district court granted "limited discovery," A3.

The district court narrowed the scope of the already limited discovery sought, exercising its substantial discretion. *See* A9-10, A12-13 (denying deposition of Steven Davis, discovery regarding DOGE's document preservation practices and visitor access requests, and interrogatory regarding identities and hiring processes for DOGE's administrators). The discovery order was sensibly tailored and squarely within the district court's discretion under Rule 56(d) and within the scope of Rule 26(d)(1). *See Stella v. Mineta*, 284 F.3d 135, 147 (D.C. Cir. 2002).

The government regardless repeats many of the objections that the district court rejected, while raising a raft of insufficient and forfeited new objections under the guise of the separation of powers.

Interrogatory Nos. 6 and 8. The government has acknowledged that written discovery is "the least burdensome and most efficient approach" to discovery if, as is abundantly clear, discovery is permitted, *see* ADD103-05, and it has forfeited any claim that the separation of

powers compels alterations to the discovery here. *Supra* Part I.A.3. Written discovery also was granted in similar cases. *Supra* Part I.A.2.

The government nevertheless objects to Interrogatories 6 and 8, which require DOGE to provide information regarding certain "recommendations" that DOGE and DOGE Teams—which are appointed in consultation with DOGE, and bound to coordinate with it—have made to federal agencies since January 20 regarding the cancellation or rescission of contracts, grants, leases, or similar instruments or adverse federal employment actions, and whether they were followed. The government primarily objects based on the deliberative process privilege, Pet. 17, 34-36, but those objections are both premature and insufficiently defined.

Because DOGE is not entitled to special treatment under *Cheney*, *supra* Part I.A, it must raise and log privilege objections in the ordinary course like other EOP components, *see, e.g., Pub. Citizen*, 598 F.3d at 867. Indeed, CREW's discovery instructions and the district court's order make clear that DOGE "may assert privilege in its discovery responses 'as CREW's proposed discovery requests explicitly instruct.'" A12.

32

Nor do the government's blanket deliberative process objections justify mandamus. "[T]he deliberative process privilege is 'dependent upon the individual document and the role it plays in the administrative process.'" *Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 55 (D.C. Cir. 2021) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). Categorical assertions of privilege are thus improper.

The government insists that because the interrogatories seek "recommendations," the information is necessarily pre-decisional and irrelevant. But as the district court explained, "the line between a recommendation and directive is a blurry one," and "CREW is attempting to determine whether [DOGE's] purported recommendations are always followed (or almost always followed)," so the entire point of these interrogatories is to determine whether DOGE's purported recommendations were, in reality, directives. *See* A12.[3] This information, along with other discovery regarding DOGE's reach into federal agencies, is the type of practical information about an

_____

[3] The government objects on a similar basis to a previous version of Interrogatory 9, Pet. 10, 36, to which the district court did not order DOGE to respond. *See* A12.

EOP component's operations that courts in this Circuit analyze in determining that component's agency status. *Supra* Part II.B-C.

Deposition of Amy Gleason. The government's arguments that *Cheney* precludes Gleason's deposition fail for the above reasons. *Supra* Part I.A. Moreover, the government's reliance on Gleason's testimony as a sword and its invocation of *Cheney* as a shield to those same facts is fundamentally unfair and inconsistent with this Court's approach to discovery. *Cf. In re Sealed Case*, 676 F.2d 793, 807 (D.C. Cir. 1982) (a "privileged person . . . cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.").

This Court and others have required government declarants—including agency heads—to appear for deposition or cross-examination to answer questions about their sworn statements. *See, e.g.*, *In re Cheney*, 544 F.3d at 312-14 (requiring deposition of Vice President's Deputy Chief of Staff and National Archives official "to follow up on factual questions that [they] had put at issue in [their] declarations"); *AFL-CIO v. Dep't of Lab.*, 2025 WL 1142495 (D.D.C. Feb. 27, 2025) ("It would be strange to permit defendants to submit evidence that addresses critical factual issues . . . without permitting plaintiffs to

explore those factual issues through very limited discovery."); *Am. Fed. Gov't Emps. v. OPM*, No. 25-cv-1780, ECF No. 89 (N.D. Cal. Mar. 10, 2025) (requiring testimony of agency head declarant); *Richie v. Vilsack*, 287 F.R.D. 103 (D.D.C. 2012) (government declarant). Such depositions are appropriate in FOIA cases where, as here, the district court finds a declarant's sworn statements are "called into question by contradictory evidence in the record." A9.

Because Gleason put her declarations in evidence, this case differs from those disallowing discovery as to government officials with "no apparent involvement in th[e] litigation." *In re Cheney*, 544 F.3d at 313-14 (denying deposition of uninvolved official in the Office of the Vice President); *see also* Pet. 32.

The 30(b)(6) deposition—to which the government does not specifically object—is no substitute for CREW's right to cross-examine Gleason on her declaration, particularly given the issues with it, *supra* pp. 10-11, and would be inconsistent with other cases where EOP components have disputed their agency status with sworn statements, *see, e.g.*, *OA*, 566 F.3d at 224, and in recent discovery ordered on DOGE's activities, *see AFL-CIO*, No. 15-cv-339 (D.D.C.), ECF No. 48.

35

Additional Objections. The government's scattershot objections regarding DOGE's obligation to provide information on DOGE Teams warrant little discussion. The district court noted the discovery merely requires DOGE to provide information about DOGE Teams—which by Executive Order are created in consultation with DOGE and required to coordinate with it in pursuit of the single, ambiguous goal of "implementing the President's DOGE agenda"—in DOGE's custody, control, and possession. A6-7, 11. Given that the DOGE EO explicitly requires coordination and the government's summary judgment motion turns on how DOGE interacts with agencies, the district court did not clearly and palpably err by ordering such discovery. *Id.* at 5-6. Indeed, the district court noted that another court reached the same conclusion in ordering discovery regarding DOGE Teams (where the government has not sought mandamus). A7 (citing *AFL-CIO*, No. 25-cv-339, ECF No. 75, at 3 n.4).

Petitioner's burden objections likewise lack merit. DOGE is not entitled to special treatment under *Cheney*. *Supra* Part I.A. And any burden from responding to expedited discovery is a problem of the

government's making. *Supra* pp. 10-13, Part I.A.3-B.2. Even in

opposing discovery, the government did not propose narrower discovery

or an alternative discovery schedule. *See generally* ADD096- 116.

Any claimed burden is further undermined by DOGE's official

government website, which includes a detailed "Wall of Receipts" where

DOGE continuously publishes its purported actions (or

"recommendations") to slash federal agency leases, contracts, grants,

and other spending.[4] Responding to discovery relating to this already-

compiled information should pose little burden to DOGE.

Equally meritless is the government's claim that the discovery

ordered here contradicts *Cheney*'s "admonition" against awarding

plaintiffs "all the disclosure to which they would [have] be[en] entitled

in the event they prevail[ed] on the merits." 542 U.S. at 388. This

argument is forfeited because the government failed to raise it below.

*See* ADD096-116. It is also wrong, for three reasons.

First, the primary relief sought in the complaint is for a

declaratory judgment that DOGE is an agency subject to FOIA and the

---

[4] *See* DOGE, *Savings*, https://www.doge.gov/savings.

FRA. *See* Compl., Prayer for Relief ¶ 1, ECF No. 1. That relief would subject DOGE to FOIA and the FRA on a forward-going basis—relief far broader than the mere disclosure of documents responsive to CREW's discovery and FOIA requests. This case is thus akin to *In re Cheney*, where the Court held that the discovery did "not itself provide the relief sought in the complaint" because the "ultimate relief plaintiffs" sought was "a declaration on whether [the Office of the Vice President's] classification policy is consistent with the [Presidential Records Act]— relief far beyond" the discovery ordered by the district court. 544 F.3d at 314.

Second, the discovery will provide CREW no relief on its FRA claim seeking to initiate an enforcement action to recover unlawfully destroyed federal records. *See* Compl. 34.

Third, the discovery does not cover all documents sought in CREW's FOIA request. The discovery seeks more limited records on DOGE's composition and communications. CREW's FOIA request, by contrast, seeks memoranda, directives, and policies regarding DOGE operations, ethics pledges and waivers, financial disclosures, and a larger set of communications within DOGE and with federal agencies.

38

*Compare* ADD075-95, *with* ADD055-64.

## II.    The government has other adequate means to attain the relief it is seeking.

Mandamus is available only if "the party seeking issuance of the writ has no other adequate means to attain the relief he desires." *In re Flynn*, 973 F.3d at 78. The government has had numerous other ways to obtain the relief sought in its petition, which, as noted above, "is really seeking relief from the results of its own decisions." *Conax Florida Corp. v. United States*, 824 F.2d 1124, 1131 (D.C. Cir. 1987). "During the course of this litigation," the government "made some strategic choices . . . that now appear improvident. The courts normally are not available to relieve parties from the operation of their own litigation strategies. [This Court should] find no reason to deviate from that salutary policy." *Id.* at 1131-32.

If the government believed DOGE's agency status could be resolved without discovery based on its charter documents, Pet. 22, then it should have moved to dismiss or for judgment on the pleadings on that basis. It did not. It took a different tack, for example, in *State of New Mexico v. Musk*, No. 25-cv-429 (D.D.C.), where the government's

motion to dismiss led this Court to stay discovery pending resolution of that motion. *See In re: Elon Musk*, No. 25-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025).

The government also could have taken action to limit the scope of the discovery and the burden of responding to it on an expedited basis. The government could have supported its summary judgment motion with a more reliable declaration, including by a declarant it would have been willing to designate for a Rule 30(b)(6) deposition. Or it could have deferred moving for summary judgment and allowed discovery to proceed in the normal course. It also could have timely raised the myriad arguments it has forfeited, including proposing more tailored discovery or a different schedule, to the district court. The government did none of those things.

Additional remedies remain. First, the government may still assert the privileges it prematurely asserts here to prevent the inappropriate disclosure of information. *Supra* Part II.B.2. Second, the government can—as is the proper course—appeal an adverse final judgment. *In re EOP*, 215 F.3d at 23. The discovery order does not foreclose the government's ability to dispute that

40

DOGE wields substantial independent authority—it will merely aid the district court's analysis of that question. The mere grant of discovery here does not mean CREW will prevail in establishing DOGE's agency status, as this Court's precedents confirm. *OA*, 566 F.3d at 224 (holding EOP unit was not subject to FOIA based in part on discovery record); *Armstrong*, 90 F.3d at 560 (same).

### III.  A writ of mandamus is inappropriate under the circumstances.

For all the above reasons, this is plainly not a case where "the writ is appropriate under the circumstances." *In re Flynn*, 973 F.2d at 78 (cleaned up). And while the government uses this long-shot petition to further delay the resolution of its pending partial summary judgment motion, CREW continues to be denied the relief it won in the preliminary injunction more than six weeks ago, *see generally* ADD001-37, but that is being held in abeyance until resolution of that motion, ADD045. All the while, DOGE continues to exercise its "substantial authority over vast swathes of the federal government" while refusing to provide CREW and the public with information about its operations that they urgently need. *See* ADD025, ADD031-34.

41

The circumstances of this case also distinguish it from *In re Elon Musk*, where a panel of this Court granted the government's motion for an emergency stay of discovery relating to White House employee Elon Musk because "the district court was required to decide [defendants' pending] motion to dismiss before allowing discovery" in aid of a forthcoming preliminary injunction motion. No. 25-cv-5072, 2025 WL 926608, at *1 (D.C. Cir. Mar. 26, 2025). Here, a preliminary injunction was issued weeks ago, the government did not move to dismiss but instead moved for summary judgment with supporting evidence, and the discovery order scrupulously avoids any incursion into the President's immediate staff or advisers, *see generally* A4-28.

## CONCLUSION

The petition should be denied.

Dated: April 25, 2025

Respectfully submitted,

*/s/ Nikhel S. Sus*
NIKHEL S. SUS
JONATHAN E. MAIER*
LAUREN C. BINGHAM
JOHN B. HILL*
DONALD K. SHERMAN**
Citizens for Responsibility
and Ethics in Washington

42

P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org

*Counsel for Citizens for
Responsibility and Ethics in
Washington*

## CERTIFICATE OF COMPLIANCE

This Response to Petition for a Writ of Mandamus complied with the type-volume limit of Fed. Rule of Appellate Procedure 21(d)(1) because it contains 7,795 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 21(d) and 32(c) because it was prepared using word-processing software in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Nikhel S. Sus*
NIKHEL S. SUS

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing Response to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users.

*/s/ Nikhel S. Sus*
NIKHEL S. SUS

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

a.  Parties and Amici.

All parties, intervenors, and amici appearing before the district court and in this Court are listed in the Certificate as to Parties in the government's Petition for Writ of Mandamus.

b.  Rulings under Review.

The ruling at issue appears in the Certificate as to Parties in the government's Petition for Writ of Mandamus.

c.  Related Cases.

Counsel is not aware of any related cases.