**[ORAL ARGUMENT NOT SCHEDULED]**

**NO. 25-5130**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

In re U.S. DOGE Service, *et al.*,

Petitioners.

———————————————

On Petition for a Writ of Mandamus to the United States
District Court for the District of Columbia

———————————————

**RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR A
STAY PENDING A RULING ON THE GOVERNMENT'S
PETITION FOR A WRIT OF MANDAMUS AND AN IMMEDIATE
ADMINISTRATIVE STAY**

———————————————

NIKHEL S. SUS
JONATHAN E. MAIER*
LAUREN C. BINGHAM
JOHN B. HILL*
DONALD K. SHERMAN**
Citizens for Responsibility
and Ethics in Washington
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org

*Application for admission to
D.C. Circuit pending
**Application for admission to
D.C. Circuit forthcoming

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

INTRODUCTION ............................................................................... 1

LEGAL STANDARD ........................................................................... 6

ARGUMENT ..................................................................................... 7

    I. The government's mandamus petition is highly unlikely to
succeed ............................................................................................ 7

    II. The government makes no meaningful claim that it will be
irreparably harmed absent a stay ..................................................... 10

    III. A stay will continue to irreparably injure CREW and harm the
public interest . ............................................................................... 14

CONCLUSION ................................................................................ 17

CERTIFICATE OF COMPLIANCE ................................................. 18

CERTIFICATE OF SERVICE ......................................................... 19

**INTRODUCTION**

The government's emergency motion for a stay is its latest effort to prevent disclosure of information about the operations of the United States DOGE Service ("DOGE"), an "unprecedented" new unit of the Executive Office of the President ("EOP") that appears to be wielding "substantial authority over vast swathes of the federal government" at a "remarkably swift[]" pace and with "unusual secrecy." ADD007, ADD025, ADD033, ADD036. This time, that delay is tied to a long-shot petition for mandamus seeking to quash routine discovery necessitated by the government's litigation choices. Because it meets none of the requirements for a stay, the government's motion should be denied.

First, the government fails to make "a strong showing that [it] is likely to succeed on the merits" of its mandamus petition. *Nken v. Holder*, 556 U.S. 418, 426 (2009). Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *In re Flynn*, 973 F.3d 74, 78 (D.C. Cir. 2020) (citation omitted). It is "an option of last resort" that is "hardly ever granted[,]" *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023) (citations omitted), and requires exacting showings by the government that its right to the writ is "clear

and indisputable," other adequate remedies are unavailable, and that it is appropriate under the circumstances. *In re Flynn*, 973 F.3d at 78. Yet the government's petition relies on forfeited and meritless arguments regarding the separation of powers, the abandonment of this Court's longheld processes for determining whether EOP components are subject to FOIA, and a total disregard for the district court's wide discretion to manage discovery.

Second, the government comes nowhere close to showing irreparable harm that is "'certain and great,' 'actual and not theoretical,' and so 'imminent that there is a clear and present need for equitable relief to prevent [it]'" and "beyond remediation." *League of Women Voters v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)) (cleaned up). The government musters only a single paragraph raising concerns about intrusion on government functions not even implicated here and non-specific assertions that the mere burden of responding to ordinary discovery somehow constitutes irreparable harm—a principle that would redefine the scope of discovery.

Third, granting a stay would irreparably harm Citizens for Responsibility and Ethics in Washington ("CREW") and the public interest. The government's current bid to delay disclosure has effectively frozen a preliminary injunction CREW obtained more than six weeks ago, a ruling the government chose not to appeal. That preliminary injunction requires DOGE to expeditiously process a January 24, 2025 Freedom of Information Act ("FOIA") request for documents shedding much-needed light on DOGE's secretive structure and operations. *See* ADD001-37. To forestall that ruling, the government hurriedly moved for summary judgment on the question of DOGE's agency status, and the district court has made clear it will not require disclosure of records responsive to CREW's FOIA request until it resolves that pending motion. Because the discovery order that the government now seeks to stay concerns information CREW needs to oppose summary judgment, granting the stay will further stall the proceedings and perpetuate the irreparable harm found by the district court and not appealed by the government.

Finally, the balance of equities weigh heavily against granting a stay given the government's pattern of dilatory conduct and lack of

diligence in this case. The government earlier caused delay by filing a motion for reconsideration of the district court's preliminary injunction that deployed only waived arguments and evidence the government could have raised earlier. *See* ADD038-39, ADD046-47. In that motion, the government vowed to file a separate expedited motion for summary judgment on a threshold issue it chose not to address in opposing CREW's preliminary injunction motion: whether DOGE wields substantial independent authority and thus is a de facto "agency" under FOIA. *See* ADD041, ADD044.

While the district court denied reconsideration, it invited the government to file its motion for summary judgment so the question of DOGE's agency status could be resolved on a more fulsome factual record. In doing so, the district court twice alerted the government that its motion would likely require discovery into DOGE's operations under Fed. R. Civ. P. 56(d). ADD042, ADD052. It also noted that the declaration of DOGE's Acting Administrator Amy Gleason that it attached to its motion for reconsideration to resolve DOGE's agency status was "called into question by contradictory evidence in the record" and "may provide a basis for CREW to seek discovery under Rule 56(d)."

ADD046-47 (quotation omitted). The questionable statements in the Gleason declaration related not to trivialities, but to the very nature of DOGE's work, its leadership, and even Gleason's role in it. *Id.*; *see also* ADD065-69.

Fully warned of the virtual certainty that doing so would lead to discovery, the government pushed ahead with its motion for partial summary judgment on whether DOGE wielded substantial independent authority. *See generally* Defs.' Summ. J. Mem., ECF No. 24-1. Despite the district court's admonitions, it attached a second declaration from Ms. Gleason that contained the same contradicted statements while, at the same time, amending her testimony to clarify that she was not even a full-time employee of DOGE. *Compare* ADD065 ¶ 3, *with* ADD070 ¶ 3.

Shortly thereafter, CREW filed its motion for discovery under Rule 56(d), which sought to develop the factual record on DOGE's substantial independent authority so that it could respond to the government's motion for partial summary judgment. *See generally* ADD075-95. The district court granted that motion in part, narrowing the requested discovery and ordering DOGE—which had pressed for an

expedited resolution of its agency status—to respond on an expedited timeframe so that its motion could be heard quickly. *See* A02-14.

With its efforts to block disclosure of DOGE's operations sputtering, the government now turns to this Court to save it from itself. Its emergency motion for a stay seeks to excuse DOGE from responding to the district court's discovery order it invited while the Court considers the government's petition for mandamus. But the government's petition is destined to fail and its stay motion is a non-starter.

Both the government's motion and petition lack merit and should be swiftly denied. It is time for DOGE to comply with the district court's order, no matter how much it desires to escape the consequences of its litigation decisions.

## LEGAL STANDARD

A stay is an "extraordinary remedy." *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1327 (D.C. Cir. 2024) (citation omitted); *see Nken*, 556 U.S. at 432-33. The party seeking a stay bears the "burden of showing that exercise of the court's extraordinary injunctive powers is warranted," *Cuomo v. U.S. Nuclear Regul.*

*Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam), based on four "traditional" factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 425-26 (citation omitted).

## ARGUMENT

### I.  The government's mandamus petition is highly unlikely to succeed.

As detailed fully in CREW's response to the mandamus petition, the government has not "made a strong showing that [it] is likely to succeed on the merits." *Nken*, 556 U.S. at 434; *see Alpine Sec. Corp.*, 121 F.4th at 1327. Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Flynn*, 973 F.3d at 78 (quoting *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004)). It "may never be employed as a substitute for appeal," nor can it "be used to actually control the decision of the trial court, because as an appellate court," this Court is "a court of review, not of first view." *Id.* (cleaned up) (citations omitted). Mandamus is "hardly ever granted"

and is "an option of last resort." *Ferriero*, 60 F.4th at 714 (citation omitted).

"[T]he writ of mandamus should issue only if:" (1) "the petitioner satisfies the burden of showing that his right to issuance of the writ is clear and indisputable"; (2) "the party seeking issuance of the writ has no other adequate means to attain the relief he desires"; and (3) "the issuing court, in the exercise of its discretion, is satisfied that the writ is appropriate under the circumstances." *Flynn*, 973 F.3d at 78 (internal quotation and citation omitted).

The high bar for mandamus relief by itself makes it substantially *unlikely* that the government will succeed on the merits. *See Ferriero*, 60 F.4th at 714. But the government's likelihood of success is particularly low here given the glaring shortcomings in its petition, discussed in CREW's opposition to the petition and incorporated by reference here. *See generally* Pet. Opp'n.

First, the petition falls far short of establishing that the government has a "clear and indisputable right" to quash the district court's reasonably-scoped discovery order, *Flynn*, 973 F.3d at 78 (citation omitted). The government's primary argument is premised on

a separation of powers argument, relying on *Cheney*, 542 U.S. at 367, that has been forfeited, does not apply to DOGE as an EOP unit outside of the White House Office or Office of the Vice President, and does not apply to this case because discovery was triggered by the government's own litigation conduct, *see* Pet. Opp'n 14-23.

Likewise, the petition does not establish that the government has a "clear and indisputable right" to quash the district court's discovery order because of its scope. *Flynn*, 973 F.3d at 78 (citation omitted). The discovery order in this case was properly issued pursuant to Rule 56(d) so that the district court is able to determine the singular issue raised in the government's motion for partial summary judgment: whether DOGE wields substantial independent authority and is thus an agency under FOIA. *See* Pet. Opp'n at 23-38. Despite the government's assertion otherwise, that is a fact-intensive legal question on which courts grant discovery to ascertain how EOP components actually operate. *See id.* at 23-28. And the district court's discovery order was properly tailored to that purpose. *See id.* at 28-38.

Second, the petition fails to establish that the government "has no other adequate means to attain the relief [it] desires." *Flynn*, 973 F.3d

at 78 (citation omitted). The discovery order is the result of DOGE's decision to seek early summary judgment on its agency status rather than taking various other paths. And even now, it has ample remedies to protect the interests it asserts. Pet. Opp'n 38-40.

Finally, mandamus is inappropriate "under the circumstances." *Flynn*, 973 F.3d at 78. The government's petition seeks to prevent any progress on DOGE's compliance with the preliminary injunction requiring DOGE to expeditiously respond to CREW's underlying FOIA request, and the posture of this case sets it entirely apart from other cases in which this Court has recently stayed discovery in connection with a writ of mandamus. *See* Pet. Opp'n 40-41.

## II. The government makes no meaningful claim that it will be irreparably harmed absent a stay.

The government cannot show that simply responding to ordinary discovery would cause it irreparable harm, let alone harm sufficient to justify a stay. "'A stay is not a matter of right, even if irreparable injury might otherwise result[.]'" *Nken*, 556 U.S. at 427 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). Nor is "simply showing some 'possibility of irreparable injury'" sufficient to justify one's issuance. *Nken*, 556 U.S. at 427 *(*quoting *Abbassi v. INS*, 143 F.3d 513,

514 (9th Cir. 1998)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (holding that the "possibility" standard is "too lenient"). Rather, irreparable harm must be (1) "'certain and great,' 'actual and not theoretical,' and so 'imminent that there is a clear and present need for equitable relief to prevent [it]'" and (2) "beyond remediation." *Newby*, 838 F.3d at 7-8 (quoting *England*, 454 F.3d at 297) (cleaned up).

The government's motion, which makes no independent argument regarding irreparable harm and merely refers to the government's petition, Stay Mot. 1-2, does not approach meeting that exacting standard. In its only reference to any potentially irreparable harm, the petition nakedly asserts that,

> compliance with [the] discovery order intrudes upon the prerogatives and autonomy of the Office of the President, results in the loss of confidentiality of that Office's communications, and burdens the Executive with the task of assessing and invoking privilege over wide range [sic] of information, all of which cause irreparable harm to the government.

Pet. 37.

This is nonsensical. As an initial matter, the "Office of the President" (also known as the White House Office) is a distinct unit of

EOP that is separate from DOGE and subject to different discovery considerations. *See supra* Part I; Pet. Opp'n 18-21. Further, *none* of the discovery ordered here seeks communications between DOGE and the White House Office, it explicitly excludes any communications with the President, and it does not call for the production of any privileged information. *See* A15-28. The discovery seeks only limited information about DOGE's internal structure and operations and the manner in which it interacts with agencies and DOGE Teams *outside of* the White House. *See* A15-28, *see also* A08-14 (limiting requested discovery and addressing government's objections). Given those basic facts, the government's claim of intrusion on the White House Office and the loss of confidentiality of its communications is not only theoretical, but flatly incorrect. *Newby*, 838 F.3d at 7-8; *England*, 454 F.3d at 297.

Equally groundless is the government's claim that it would be irreparably harmed by the "burdens [on] the Executive" associated "with the task of assessing and invoking privilege over wide range [sic] of information." Pet. 37. Because *Cheney* does not apply here and DOGE is not entitled to any special treatment under that decision, Pet. Opp'n 16-23, these generalized burdens, which are common in any civil

litigation, do not meet the high bar of irreparable harm. Indeed, the government's doomsday characterization of routine discovery is undermined by the fact that other EOP units have responded to discovery in similar disputes over their agency status. *See, e.g.*, *Citizens for Resp. & Ethics in Wash. ("CREW") v. Off. of Admin.*, 566 F.3d 219, 221, 225-26 (D.C. Cir. 2009) (FOIA case involving Office of Administration); *Armstrong v. EOP*, 90 F.3d 553, 561 (D.C. Cir. 1996) (FOIA case involving National Security Council); *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 185 F. Supp. 3d 26, 27 (D.D.C. 2016) (Office of Science and Technology Policy); *EPIC v. Off. of Homeland Sec.*, No. 02-cv-00620, ECF No. 11 (D.D.C. Dec. 26, 2002) (FOIA case involving Office of Homeland Security); *AFL-CIO v. U.S. Dep't of Lab.*, No. 25-cv-339, 2025 WL 1129202, at *8 n.17 (D.D.C. Mar. 19, 2025) (ordering discovery).

Further, any such burden, and particularly the burden associated with the expedited nature of the ordered discovery, is a problem of the government's own making and a consequence of its actions to resolve this case on a highly expedited timeframe. As described above and in CREW's response to the petition, the district court's discovery order was

an inevitable consequence of the government's litigation strategy. *See supra* 4-7; Pet. Opp'n 9-13. Even in opposing discovery, the government made the strategic choice not to propose more limited discovery or, if the Court granted CREW's motion, an alternative discovery schedule. *See generally* DOGE Disc. Opp'n, ECF No. 34. A litigant is not entitled to the extraordinary remedy of a stay to prevent such self-inflicted harm.

## III. A stay will continue to irreparably injure CREW and harm the public interest.

The government's failure to establish substantial likelihood of success on the merits or irreparable harm are dispositive, but the remaining factors also weigh against issuing a stay. *See Nken*, 556 U.S. at 426. The government's blithe statement that CREW will not be injured by the stay ignores the posture of this case. Stay Mot. 3. More than six weeks have elapsed since the district court issued its preliminary injunction requiring DOGE to begin processing CREW's FOIA request (a ruling the government did not appeal). *See* ADD037. That order was issued to address CREW's and the public's urgent need for information about DOGE's "unprecedented" operations as it continues to exercise its "substantial authority over vast swathes of the

14

federal government" with "unusual secrecy." ADD008, ADD025, ADD034, ADD036. And yet, CREW has not received a single document to which it is legally entitled, since the district court has said that it will not require DOGE to actually produce documents until it resolves DOGE's motion for summary judgment, which DOGE now seeks to further delay.

This motion is only the latest in an unmistakable pattern of delay by the government to avoid compliance with the preliminary injunction issued against DOGE. The district court has already had to address a baseless motion for reconsideration and a stay that resulted in a one-week delay in DOGE's disclosure of the estimated volume of documents responsive to CREW's FOIA request, ADD054, and had to clarify an already clear order to DOGE so that it actually begins processing documents to be produced when the Court denies its summary judgment motion. *See* Min. Order (Apr. 10, 2025) ("[T]he Court ordered USDS to begin processing records because 'if USDS does not even begin processing the request until after the question of whether it is subject to FOIA is litigated on the merits, a decision in CREW's favor will likely

be followed by additional processing delays' . . . USDS, along with OMB, must begin processing responsive records now.").

This Court should not allow the government to continue to deny CREW the judicial relief that it won six weeks ago, this time by delaying compliance with a discovery order it knew would be issued if it prematurely sought summary judgment, and certainly not by countenancing yet another hodgepodge of forfeited and half-baked legal arguments designed to make the simple look complicated and the routine look extraordinary. *See supra* Part I. The government has raised a fact-intensive legal issue supported by unreliable evidence, and did so in a manner it was explicitly told would lead to discovery, to which it now needs to respond. *Id.* The government's continued delays are contrary not only to the public interests described in the preliminary injunction order, but also to the public interests embodied by FOIA. *See, e.g., U.S. Dep't of Just. v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 773 (1989) (describing "the citizens' right to be informed about 'what their government is up to"); *see also Ctr. to Prevent Handgun Violence v. U.S. Dep't of the Treasury*, 49 F. Supp. 2d

3, 5 (D.D.C. 1999) (describing the "public benefit in the release of information that adds to citizens' knowledge" of government activities).

## CONCLUSION

The Court should deny the government's motion for a stay.

Dated: April 25, 2025

Respectfully submitted,

*/s/ Nikhel S. Sus*
NIKHEL S. SUS
JONATHAN E. MAIER*
LAUREN C. BINGHAM
JOHN B. HILL*
DONALD K. SHERMAN**
Citizens for Responsibility
and Ethics in Washington
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org

*Counsel for Citizens for
Responsibility and Ethics in
Washington*

*\*Application for admission to
D.C. Circuit pending
\*\*Application for admission to
D.C. Circuit forthcoming*

**CERTIFICATE OF COMPLIANCE**

This Response in Opposition to Emergency Motion to Stay complies with the type-volume limit of Fed. Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,168 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it was prepared using word-processing software in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Nikhel S. Sus*
NIKHEL S. SUS

# CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2025, I electronically filed the foregoing Response to Petition for Writ of Mandamus with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users.

*/s/ Nikhel S. Sus*
NIKHEL S. SUS