# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re U.S. DOGE SERVICE, et al.,

Petitioners.

## RESPONSE TO MOTION FOR SUMMARY DISPOSITION

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney
   General*

MARK R. FREEMAN
THOMAS PULHAM
STEVEN A. MYERS
   *Attorneys, Appellate Staff
   Civil Division, Room 7232
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 305-8648*

**INTRODUCTION**

The United States DOGE Service (USDS) does not have the power to issue binding directives, but the United States Supreme Court does. On June 6, the Supreme Court exercised that power by adopting the government's central contention in this litigation: that because an Executive Branch entity's status under the Freedom of Information Act (FOIA) turns on its formal legal authority, such status "cannot turn on the entity's ability to persuade." *U.S. DOGE Serv. v. CREW*, No. 24-1246 (24A1122), 2025 WL 1602338, at *1 (U.S. June 6, 2025). The Supreme Court further agreed with the government that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *Id.* The Supreme Court thus vacated this Court's denial of the government's mandamus petition and remanded for application of the correct legal standards.

CREW has now filed a motion for summary disposition that asks this Court to rubber stamp all but seven of its proposed discovery requests. *See generally* Mot. That request fails to heed the Supreme Court's order, which did far more than simply "direct[] this Court to

narrow specific portions of the district court's April 15, 2025 discovery order," while leaving the "remainder of discovery intact." Mot. 1. It instead highlighted critical principles that must be applied on remand: any discovery must be relevant to the proper test of FOIA status, and any discovery must be narrowly tailored to respect the separation of powers. Discovery is generally disfavored in determining the FOIA status of components of the Executive Office of the President, and faithful application of the Supreme Court's order compels the conclusion that, to the extent any discovery is appropriate at all, it must be exceedingly limited.

## BACKGROUND

1. The full background of this dispute is set out in the government's previous briefing. As relevant here, this FOIA case arises out of certain requests to USDS, an entity in the Executive Office of the President created to help advance the President's agenda of "modernizing Federal technology and software to maximize governmental efficiency and productivity." *See* Exec. Order No. 14,158, 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025). Significantly, this advisory entity is distinct from DOGE teams within agencies, which are created

by agency heads, staffed by agency employees who report to agency leadership, and tasked with "coordinat[ing] their work with USDS." *Id.*[1]

After USDS sought summary judgment on the ground that it is not subject to FOIA, *see* Dkt. 24, Citizens for Responsibility and Ethics in Washington (CREW) sought expedited discovery, proposing three depositions (including a Rule 30(b)(6) deposition on five separate topics), thirteen interrogatories, eleven requests for admission, and fourteen requests for production, *see* Dkt. 27-1. The government objected that discovery was unwarranted because USDS's "charter documents demonstrate that it does not have" legal authority sufficient to make it an agency under FOIA, Dkt. 34, at 4, and that CREW's requests were otherwise improper. Defending its requests, CREW contended that USDS has "influence" over the entire Executive Branch

---

[1] The umbrella term "Department of Government Efficiency," or DOGE, is sometimes used to refer collectively to USDS, the "U.S. DOGE Service Temporary Organization" created within USDS, and the DOGE teams within various agencies. Exec. Order No. 14,158, 90 Fed. Reg. at 8441-42. Confusingly, CREW's discovery requests use "DOGE" to refer only to USDS and the temporary organization housed within it, whereas they use "DOGE Teams" to mean the separate teams within federal agencies. *See* Mot. Ex. A, at 4-5.

and that discovery was necessary "to ascertain how DOGE is actually influencing agency action." Dkt. 35, at 3, 6.

In permitting discovery, the district court accepted CREW's central contention—that FOIA status depends on the extent of an entity's "influence" within the Executive Branch. *See* Dkt. 38, at 10 ("If Agency DOGE teams are complying with orders from USDS leadership, that speaks to USDS's influence over other federal agencies."); *id.* at 12 (describing key question as "whether USDS employees are using that access [to federal agencies] to influence those agencies"). Thus, while the district court narrowed the discovery in certain respects, it largely permitted the discovery to go forward as requested.

**2.** Facing irrelevant, burdensome, and highly expedited discovery into the operations of an advisory component of the Executive Office of the President, the government sought mandamus from this Court. Echoing the district court's "influence" theory, this Court denied the government's petition on the grounds that an entity's FOIA status "depends on the practical realities of the entity's role, not merely on its formal placement or authority." Order 2, May 14, 2025. It further

found that the government had "forfeited" its arguments concerning the separation of powers. *Id.*

The government sought relief from the Supreme Court, which granted the government's application. The Court held that "[t]he portions of the District Court's April 15 discovery order that require the Government to disclose the content of intra–Executive Branch USDS recommendations and whether those recommendations were followed are not appropriately tailored." *U.S. DOGE Serv. v. CREW*, No. 24-1246 (24A1122), 2025 WL 1602338, at *1 (U.S. June 6, 2025). It held that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." *Id.* And it held that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *Id.* The Court thus remanded for further consideration while staying the district court's discovery order through the disposition of any future certiorari petition. *See id.* Twelve days later, CREW filed a motion for summary disposition in which it proposes to abandon seven of its discovery

requests but otherwise asks this Court to allow the remaining discovery to go forward. *See generally* Mot.

## ARGUMENT

The Supreme Court's order sets out two clear principles that must be applied before any discovery goes forward. First, because an entity's FOIA status turns on its formal authority, it "cannot turn on the entity's ability to persuade." *U.S. DOGE Serv. v. CREW*, No. 24-1246 (24A1122), 2025 WL 1602338, at *1 (U.S. June 6, 2025). Second, "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *Id.* Before any discovery proceeds in this case, some court—whether this Court or the district court—will need to go line-by-line through CREW's discovery requests to ensure that they are consistent with the Supreme Court's instructions.

CREW asserts that the Supreme Court's decision requires this Court to excise only those requests that sought USDS's recommendations to agencies. Mot. 4-5. The Supreme Court did indeed direct that such requests are improper, but CREW effectively ignores the rest of the Court's decision, which clearly required this Court to

"take appropriate action to narrow the April 15 discovery order" in accordance with *all* of its holdings—including the principle that agency status does not depend on practical power to persuade and the principle that respect for the separation of powers counsels restraint in this case. *U.S. DOGE Serv.*, 2025 WL 1602338, at *1.

## I.     Any Discovery Must Be Relevant To The Determination Of USDS's FOIA Status.

As set out above, the central basis on which CREW sought discovery is that it needed to know the extent of USDS's "influence" over various agencies in the Executive Branch. *See* Dkt. 35, at 3, 6. That is the theory that the district court accepted when it held that the central question is whether USDS is "using [its] access [to federal agencies] to influence those agencies." Dkt. 38, at 12; *see also id.* at 10 (similar). It is also the theory that this Court adopted when it denied the government's mandamus petition on the understanding that agency status turns on "practical realities" rather than "formal placement or authority." Order 2, May 14, 2025.

As the Supreme Court has now confirmed, that theory is wrong: "Any inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to

persuade." *U.S. DOGE Serv.*, 2025 WL 1602338, at *1. Instead, as the government has contended, an entity's FOIA status depends on its formal legal authority, as set out by the statutes, regulations, executive orders, or other documents setting out its formal powers. *See* Pet. for Mandamus 20-33; *see also Main St. Legal Servs. v. National Sec. Council*, 811 F.3d 542, 543-44 (2d Cir. 2016) ("[W]e construe the 'agency' provision of the FOIA, the 'function' provisions of the [National Security Council's] statute, and the current presidential directive organizing the National Security Council System … , among other available legal sources … ." (citations omitted)); *Cotton v. Heyman*, 63 F.3d 1115, 1122 (D.C. Cir. 1995) (asking "whether the relevant entity had 'any authority in law to make decisions'"); *Meyer v. Bush*, 981 F.2d 1288, 1293-94 (D.C. Cir. 1993) (relying on "[a] careful reading of the Executive Order[s]" and rejecting the relevance of "*ad hoc* directions"); *cf. Louisiana Pub. Serv. Comm'n v. Federal Commc'ns Comm'n*, 476 U.S. 355, 374 (1986) (a government body "may not confer power upon itself").

Since the relevant legal question turns entirely on formal legal authority, discovery and depositions are simply not necessary to determine whether USDS wields substantial authority independent of

the President.  And given the Supreme Court's rejection of CREW's

justification for discovery, even CREW now concedes that certain of its

proposed discovery requests are off the table.  *See* Mot. 3 n.1

(withdrawing interrogatories 6 and 8 and requests for admission 2, 4, 6,

8, and 10).[2]  Yet the vast majority of the discovery that CREW still

seeks is equally irrelevant to USDS's formal legal authority.

    ***Agency DOGE teams.***  Perhaps most striking in this regard are

the many requests that seek information about agency DOGE teams.

As explained above, DOGE teams are created by agency heads and

composed of agency employees who report to agency leadership.

Because DOGE teams exercise authorities granted to the agencies of

which they are a part and do not function as part of USDS pursuant to

the applicable executive orders, their activities have no bearing on

whether USDS—a distinct entity within the Executive Office of the

President—is vested with sufficient authority independent of the

President.  The Supreme Court has rejected plaintiffs' theory that

---

[2] We refer to the discovery requests by type and number, rather
than by citing to the pages on which they appear on Exhibits A and B to
CREW's motion.  And although footnote 1 of CREW's motion lists
interrogatories 6 and 7 as withdrawn, the attachments to its motion
make clear that CREW meant to withdraw interrogatories 6 and 8.

USDS's practical influence at agencies, including through its recommendations to DOGE teams, is relevant to its status under FOIA. Further, because USDS frequently interacts with those teams in an advisory capacity, *see, e.g.*, Exec. Order No. 14,158, 90 Fed. Reg. at 8441, communications containing responsive materials are likely to have arisen in the context of "intra-Executive Branch USDS recommendations." *U.S. DOGE Serv.*, 2025 WL 1602338, at *1. All requests for information about DOGE teams are therefore legally irrelevant and foreclosed by the Supreme Court's order. This includes all or parts of the following requests: Interrogatory 1 (asking for information about "members of DOGE Teams"); Interrogatory 4 (information about how DOGE team members are overseen and supervised); Interrogatory 5 (information about contracts, grants, and leases that DOGE team members directed to be cancelled); Request for Admission 3 (similar); Interrogatory 7 (information about employees or positions that DOGE team members directed to be terminated); Request for Admission 7 (similar); Request for Admission 9 (similar); Request for Production 4 (DOGE teams' timekeeping records); Request for Production 6 (seeking directives from DOGE teams to federal agencies);

Request for Production 9 (DOGE teams' mission statements, guidance etc., concerning their responsibilities); Request for Production 10 (documents from within DOGE teams).  Further, as set out below, *see infra* pp. 17-18, these unnecessary requests would contravene the deference and restraint required here because they would be exceedingly burdensome for USDS to address at all and impossible for USDS to address anywhere near comprehensively.

*USDS employees.*  Several interrogatories and requests for production seek various information about employees of USDS.  Interrogatories 1 and 2 ask for employees' names, dates of employment, and whether they have served on detail.  Interrogatory 12 requests the identity of all persons "who are or who have posted or authored posts" to a social media account titled "@DOGE."  None of that information is in any way relevant to whether legal authorities confer significant independent functions on USDS.

Other requests would require the production of detailed information about the minutiae of day-to-day employee management.  Request for production 4 calls for employee "timekeeping records," and interrogatory 4 seeks the identity of "all persons who oversee" USDS

11

employees, "and how they do so," including whether employees are required to submit "recurring reports" (on apparently any topic) and whether other employees are exempt from reporting requirements. Request for production 10 seeks "[a]ll announcements to any DOGE employee" regarding the "appointment or departure" of a USDS Administrator. And request for admission 11 seeks information about the size of USDS's budget. Again, none of this information bears on USDS's formal authority conferred by statute or executive order. The Supreme Court rejected plaintiffs' theory that practical influence arising from an advisory body's size and budget matters. And requests for such irrelevant and intrusive details about employees and how they spend their time are inconsistent with the deference and restraint required in this context.

*Access requests.* Interrogatory 9 seeks information about classified and sensitive systems to which USDS employees have sought access, and interrogatory 10 seeks information about instances in which USDS employees threatened to communicate with law enforcement. These interrogatories have no bearing on USDS's formal authority. While the district court believed that USDS's "access to sensitive

systems is an indicator of its authority," Dkt. 38, at 12, the mere ability to access an internal Executive Branch database in the service of providing advice to the President is hardly "substantial independent authority," *Meyer*, 981 F.2d at 1297, and any indication it provides about USDS's influence is irrelevant. Perhaps the information sought through these requests might be relevant if CREW's complaint challenged the authority of DOGE team members to access certain agency data systems, but it is plainly not relevant to the question presented by CREW's actual complaint in this case: whether an entirely different government entity, USDS, is an agency for purposes of FOIA. And compliance with these requests would also be exceedingly burdensome, in violation of the deference and restraint required here. *See infra* pp. 18-19.

**Preservation.** Interrogatory 11 seeks information about whether USDS employees or DOGE team members are satisfying document preservation obligations. The district court already rejected this interrogatory, *see* Dkt. 38, at 9, and we presume that CREW has included it erroneously.

\*    \*    \*

When the obviously irrelevant discovery is excluded, what principally remains are various questions asking, in sum and substance, whether USDS "directed" federal agencies to take particular steps. *See* Interrogatories 5 and 7 (to the extent they seek directives issued by USDS); Requests for Admission 1 and 5; Request for Production 5; Request for Production 7 (to the extent it seeks directives from the USDS Administrator to DOGE teams). If required to do so, USDS could respond to these requests by once again acknowledging that while it has advised and influenced various agencies—which, like USDS, ultimately report to the President—it lacks the authority to direct them to do anything.[3]

## II.    Discovery Must Not Be Unduly Burdensome Given Separation Of Powers Concerns.

In addition to highlighting the substantive standard for agency status under FOIA, the Supreme Court also underscored that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch

---

[3] Although we do not address them in detail here, the following discovery requests are also unnecessary to a determination of USDS's FOIA status: requests for production 1, 3, 8, 9 (to the extent it concerns records about USDS), 11, 12, and 13.

communications." *U.S. DOGE Serv.*, 2025 WL 1602338, at *1.  Those

separation of powers concerns—which the Supreme Court made clear

must be heeded notwithstanding CREW's unsupported allegations of

forfeiture—reinforce that this Court should limit any possible discovery

and depositions far beyond what CREW has proposed, lest the district

court unnecessarily saddle senior Executive Branch officials with

burdensome discovery.

    ***Depositions.***  Given that the inquiry into an entity's FOIA status

turns on formal legal authority, there is no need for depositions.  This

conclusion is reinforced by the Supreme Court's admonition about

respecting the separation of powers and exercising judicial restraint.  If,

however, this Court is inclined to authorize any depositions, there is no

basis for requiring a deposition of Amy Gleason, the USDS

Administrator.  The district court believed that Ms. Gleason must be

deposed because she submitted a declaration in support of USDS's

summary judgment motion, *see* Dkt. 38, at 8, but that short declaration

was limited to describing the instruments that formally create USDS

and set out its authorities, Dkt. 24-2.  Indeed, plaintiff itself complained

that the declaration was "cursory" and observed that the government

"only cite[d]" it "a handful of times," mainly to refer to the "executive orders." Dkt. 27, at 2, 18 n.3. Those executive orders speak for themselves. To the extent the Court determines that CREW is entitled to ask questions about them in a deposition, however, a Rule 30(b)(6) deposition with a witness of USDS's choosing should be sufficient.

In contrast, precedent makes clear that depositions of high-ranking officials like Ms. Gleason should not be permitted "absent extraordinary circumstances." *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985). The reason is obvious: "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers." *In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 703 (9th Cir. 2022) (emphasizing that a judicial order allowing the deposition of a current or former high-ranking Executive Branch official threatens to "disrupt the normal governmental balance of powers"). The Supreme Court has now once again called for "judicial deference and restraint" in light of the "separation of powers concerns" presented by this litigation, *U.S. DOGE*

16

*Serv.*, 2025 WL 1602338, at *1, and given those concerns there is no basis for requiring Ms. Gleason's deposition.

**Agency DOGE Teams.** As set out above, CREW seeks voluminous information about agency DOGE teams—to whom individuals on these teams report, what directives those individuals have issued, how these individuals report their time, etc. *See supra* pp. 9-11. These are all questions about the identities and activities of employees of various federal agencies.

Because USDS frequently interacts with DOGE teams in an advisory capacity, various individuals at USDS would likely have some information responsive to these requests. But USDS does not have a central repository of all of this information. Instead, any responsive information that USDS possesses would exist because some USDS employees have picked it up in piecemeal fashion through interactions with the rest of the Executive Branch, such as by being included on emails discussing agency activities. Searching for responsive information would thus require looking across the entirety of USDS. Those would be extremely difficult and time-consuming searches to perform, and such searches could not possibly produce anywhere near

comprehensive information about all agency DOGE teams.  Requiring

USDS to conduct such needle-in-a-haystack searches thus fails to reflect

appropriate "judicial deference and restraint."  *U.S. DOGE Serv.*, 2025

WL 1602338, at *1.  If CREW wanted information about the activities of

any particular federal agency (including its DOGE team), it should have

submitted FOIA requests to that agency.

    ***Data Access.***  Interrogatory 9 would require USDS to identify

each sensitive or classified system that USDS employees have

attempted to access, and interrogatory 10 seeks information about

instances in which USDS employees threatened to communicate with

law enforcement.  As set out above, those requests are not relevant to

the question of USDS's formal authority.  *See supra* pp. 12-13.

Moreover, as the government has previously explained, *see* Dkt. 34, at

20, it does not maintain a repository of agency systems to which

particular individuals have sought access.  Attempting to reverse-

engineer such information would require review of emails across USDS,

a process that would be exceedingly burdensome and largely ineffective

for all the same reasons that it would be burdensome and ineffective to

locate information about agency DOGE teams.

The district court suggested that it would not be burdensome to respond to interrogatory 9 because USDS "has been ordered to disclose similar information in [litigation] before Judge Bates."  Dkt. 38, at 12 (referencing *AFL-CIO v. Department of Labor*, No. 1:25-cv-339 (D.D.C. filed Feb. 5, 2025)).  But the contrast to the litigation before Judge Bates only confirms USDS's point.  In that case, the plaintiffs sued three agencies alongside USDS, and the discovery request at issue was limited to situations in which USDS or DOGE teams sought access *at those agencies*.  *See* Plaintiffs' [Proposed] Interrogatories and Requests for Production of Documents, *AFL-CIO*, No. 1:25-cv-339 (Feb. 19, 2025) ECF No. 44-2.  Those agencies—not USDS—provided information about access to their systems.  CREW's failure to submit requests to the agencies whose information it actually wants—agencies that are indisputably subject to FOIA—is not the government's fault.

## III.  CREW Will Face No Meaningful Prejudice From Careful Application Of The Supreme Court's Order.

In seeking summary disposition, CREW complains about the time that it has taken to litigate this case and seeks immediate action to "avert further prejudice to CREW."  Mot. 10.  To be clear, the government has no objection to the Court's prompt resolution of this

motion.  Nevertheless, CREW dramatically overstates its need for immediate resolution, and speed must not come at the expense of faithful application of the Supreme Court's order.

When CREW initially sought preliminary relief in February 2025, it suggested that it faced irreparable harm because of a looming federal budget deadline in March 2025.  *See* Dkt. 2-1, at 32.  The district court rejected that theory, *see* Dkt. 18, at 17-22, which in any case is long since overtaken by events.  It nevertheless ordered the government to begin expedited processing of CREW's FOIA request at a rate of 1000 pages per month, *see* Dkt. 17; Min. Order, Apr. 10, 2025, so that the government would be able to produce records expeditiously if USDS were ultimately held to be an agency.[4]  To the extent that CREW is nevertheless unhappy with the time that it is taking for the district court to resolve USDS's summary judgment motion, that delay is entirely a result of CREW responding to that motion by asking for

---

[4] The district court's minute order makes clear that it does not require "USDS to produce any documents to CREW until after the Court rules on USDS's motion for summary judgment."  Min. Order, Apr. 10, 2025.

needlessly broad discovery instead of simply responding to the motion on the merits.

Thus, while CREW is entitled to the same "just, speedy, and inexpensive determination" to which any federal litigant is entitled, Fed. R. Civ. P. 1, there is no sound reason why this FOIA case must be expedited more than any other FOIA case seeking documents of some public interest. To the contrary, the Supreme Court's order—which remanded for this Court to "take appropriate action to narrow the April 15 discovery order," while staying discovery through the potential filing and disposition of a certiorari petition, *U.S. DOGE Serv.*, 2025 WL 1602338, at *1, plainly recognized that there was meaningful work to do on remand. That is especially true now that the Supreme Court has made abundantly clear that the separation of powers concerns raised by the government must be taken seriously, notwithstanding CREW's claims of forfeiture.

As set out above, complying with the Supreme Court's directives will require the careful application of the correct legal standard to each of the several dozen discovery requests as to which the parties still disagree. That is the sort of work that district courts do every day, and

this Court might reasonably determine that the "appropriate action" called for by the Supreme Court's order is to deny the motion for summary disposition for substantially the reasons given above, hold the government's mandamus petition in abeyance, and remand to the district court to further winnow down CREW's discovery requests in the first instance. But whether the district court or this Court, someone will need to ensure that any future discovery reflects the clear instructions of the Supreme Court.

## CONCLUSION

The Court should deny the motion for summary disposition.

Respectfully submitted,

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney*
   *General*

MARK R. FREEMAN
THOMAS PULHAM
*/s/ Steven A. Myers*
STEVEN A. MYERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7232*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-8648*

JUNE 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4114 words. It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Century Schoolbook typeface.

*/s/ Steven A. Myers*
Steven A. Myers

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2025, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

*/s/ Steven A. Myers*
Steven A. Myers