# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

In re U.S. DOGE Service, *et al.*,

Petitioners.

On Petition for a Writ of Mandamus to the United States District Court for the District of Columbia

**Reply in Support of Respondent's Motion for Summary Disposition**

In its latest bid to forestall discovery, the government advances a tortured reading of the June 6 remand order and rehashes arguments rejected by courts at every level, including the Supreme Court. Enough is enough. The Court remanded for the limited purpose of "narrow[ing]" those "portions" of the district court's discovery order that concern "recommendations" of the U.S. DOGE Service ("DOGE"). Citizens for Responsibility and Ethics in Washington ("CREW") has withdrawn those requests, simplifying this Court's only task. The remaining discovery is highly relevant to DOGE's agency status under controlling

precedent, poses minimal burdens, and is tailored to show ample deference to the executive branch. Summary disposition is warranted.[1]

**ARGUMENT**

**I. The government mischaracterizes the remand order.**

The second paragraph of the remand order speaks for itself. In the first sentence, the Court held that CREW's recommendation-related discovery was not "appropriately tailored," but did not explain why. Remand Order 1. The subsequent two sentences provide that explanation. They are not, as the government claims, standalone pronouncements overruling decades of this Court's FOIA precedents, nor do they invite the government to re-litigate this discovery dispute from square one.

**A. The Supreme Court rejected the government's proposed formalist test for determining an entity's FOIA status.**

The government's opposition hinges on a false premise: that the Supreme Court adopted the government's novel view that an entity's FOIA-agency status "turns *entirely* on [its] formal legal authority,"

---

[1] CREW attaches corrected versions of Attachments A and B to its motion, revised to reflect that the district court struck Interrogatory 11. A10.

Resp. 8 (emphasis added), rather than the "fact-specific functional" analysis this Court's precedents demand, *Cotton v. Heyman*, 63 F.3d 1115, 1121 (D.C. Cir. 1995); May 14 Order 2 (citing cases). The Court said no such thing. Nonetheless, from that erroneous premise, the government concludes that "discovery and depositions are simply not necessary to determine whether [DOGE] wields substantial authority independent of the President." Resp. 8-9.

The government's reading of the remand order makes no sense. Were it correct, the Supreme Court would not have remanded for "appropriate[] tailor[ing]" of the discovery order, Remand Order 1; it would have quashed discovery altogether—as the government requested, S. Ct. Stay Appl. 12-24. By requiring *narrowing* rather than *vacatur* of the discovery order, the Court necessarily rejected the government's position that DOGE's agency status is a pure legal question not warranting discovery.

Nor does the remand order overturn, *sub silentio*, decades of this Court's precedents on determining an entity's FOIA status. It merely identifies specific discovery that needs tailoring and the reasons why. The Supreme Court has frequently warned against the kind of

3

overwrought readings of its decisions the government advances, cautioning that its "opinions … must be read with a careful eye to context." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373-74 (2023) (cleaned up).

Here, the "context" of the two-page remand order demonstrates that the Supreme Court only adopted the government's discrete request (and corresponding rationale) to exclude discovery on DOGE's "recommendations." *Compare* S. Ct. Stay Appl. 12-13, 16 (seeking to quash discovery on DOGE's "recommendations" because an entity's "ability to persuade . . . does not render [it] an 'agency'"), *with* Remand Order 1 (holding that those "portions" of the discovery order concerning DOGE's "recommendations" are "not appropriately tailored" because FOIA status "cannot turn on [an] entity's ability to persuade"). The Court did not adopt the government's blunderbuss of other arguments or invite their re-litigation here. *See* Mot. 4-6.

No court has adopted the government's strict formalist test for good reason: it would give the President a blank check to create *de facto* shadow agencies that wield extraordinary power but evade FOIA by

4

being cast, on paper only, as "advisory." This Court's functionalist precedents—which the Supreme Court left intact—foreclose that result.

### B. The Supreme Court did not embrace the government's expansive separation of powers argument.

The government similarly mischaracterizes the remand order's reference to the separation of powers, Resp. 14-22, which was merely part of the Court's explanation for limiting discovery on DOGE's "recommendations," Mot. 5-7. If the Court wanted to prohibit other categories of discovery, it would have said so. *Id.*

This becomes especially clear upon considering the government's specific arguments to the Supreme Court. It argued that the separation of powers prohibits *either* all discovery, S. Ct. Stay Appl. 12-24, *or* at least certain subsets of it, including discovery concerning DOGE's recommendations, *id.* 24-31. Reading the remand order "with a careful eye to [this] context," *Ross*, 598 U.S. at 374, it would make no sense for the Court to *expressly* embrace one of the government's narrow objections (regarding recommendations) while simultaneously *impliedly* embracing its broader assertion that the separation of powers prohibits *all* (or nearly all) discovery.

Even assuming the remand order requires a fresh analysis to ensure each discovery request (including those unrelated to "recommendations") shows sufficient "deference and restraint," Remand Order 2, CREW's narrowed requests easily pass that test for the reasons below.

II. **The narrowed discovery is carefully tailored to seek highly relevant information and pose minimal burdens.**

The narrowed discovery does not seek information on DOGE's "influence" or "ability to persuade." *Cf.* Resp. 5, 7. It seeks highly relevant facts about DOGE's real-world "authority and operations," which are "critical for determining whether [it] is subject to FOIA." *CREW v. Off. of Admin.*, 566 F.3d 219, 225 (D.C. Cir. 2009). Specifically, the discovery seeks basic details about DOGE's secretive operations, reporting structure, management, composition, personnel, and budget. It also seeks key information about DOGE's interactions with federal agencies, including final directives to them, agreements with them, access to their classified or sensitive records systems, and DOGE's summoning of law enforcement against them. Rev. Ex. A.

Responding to this targeted discovery will pose minimal burdens. As this Court previously observed, the discovery only covers "records

within [DOGE's] control generated since January 20," and DOGE provides no "specific details as to why accessing its own records or submitting to two depositions would pose an unbearable burden." May 14 Order 2. DOGE's current burden-based objections fail for the same reasons. Resp. 14-19. And because DOGE need only search *its own* records, its claimed inability to provide "comprehensive" responses is immaterial. *Id.* 11, 18.

The narrowed discovery also reflects ample "deference and restraint in the context of discovery regarding internal Executive Branch communications." Remand Order 2. Because CREW has excised all discovery on "recommendations," Rev. Ex. A, DOGE need not perform any line-by-line privilege review of that specific material or log those withholdings, thus eliminating the primary objection to discovery previously raised by the government. S. Ct. Stay. Appl. 25-26.

The discovery is also tailored to exclude potentially sensitive "Executive Branch communications." Remand Order 2. It excludes *all* "communications with the President." Rev. Ex. A at 5. It likewise excludes all "emails, text messages, [and] any similar electronically exchanged communications," unless they reflect final directives or

7

announcements. *See* Rev. Ex. A at 6, A19-A20, A26-27. The discovery seeks no communications reflecting internal executive branch deliberations, advice, decisionmaking processes, or other communications whose disclosure could impair executive branch autonomy. *See* Remand Order 1; *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 385 (2004).

The government's objections to specific discovery, all of which stem from its concocted formalist test and overblown burden claims, are meritless.

***Agency DOGE Teams.*** The government insists any discovery regarding agency DOGE teams is irrelevant, erroneously claiming that the teams work solely for their designated agencies. Resp. 9-11. As the district court correctly found, that characterization is refuted by the very executive orders on which the government relies. A5-A6.

Under the executive order creating DOGE ("DOGE EO"), agency DOGE teams must be selected "[i]n consultation with" the DOGE Administrator and must "coordinate their work" with DOGE to carry out the singular "DOGE agenda" at their agencies. Exec. Order 14,158, 90 Fed. Reg. 8441 (Jan. 29, 2025). Other orders require DOGE teams to

provide monthly reports to the DOGE Administrator on a variety of topics, including agency hiring, contracting, grants, and travel activities. Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025); Exec. Order 14,222, 90 Fed. Reg. 11095 (Mar. 3, 2025). Thus, agency DOGE teams "do not simply work on behalf of the agency, but also on behalf of DOGE." *AFL-CIO v. Dep't of Lab.*, No. 25-cv-339-JDB, ECF No. 75, 3 & n.4 (D.D.C. Mar. 31, 2025).

Heightening the need for discovery on DOGE's relationship to agency DOGE teams is the undisputed fact that multiple DOGE personnel, including Acting Administrator Gleason, have been "simultaneously employed" by DOGE and other agencies. *AFL-CIO v. Dep't of Lab.*, No. 25-cv-339-JDB, 2025 WL 1129202, at *6 (D.D.C. Mar. 19, 2025) (discussing testimony in separate case revealing that "[DOGE] employees working at CFPB were 'designated' to be CFPB employees, but also that [DOGE] and CFPB were 'two tracks' at times," and that "DOGE . . . directed . . . the Chief Operating Officer of CFPB . . . to perform certain work"). DOGE's murky and unusual multi-agency employment arrangements have "muddie[d] the . . . chain-of-command waters," necessitating discovery to "clarify[]" whether those "carrying

9

out the DOGE agenda" at agencies "ultimately report and answer to" DOGE, their assigned agencies, or someone else. *Id.* Indeed, the *government itself* has argued in other litigation that identifying who "employ[s]" DOGE team members requires "a functional approach that assesses 'the subject matter and purpose of the individual's work, their supervision, and their physical worksite.'" *Id.* (quoting Defs.' Mem. Opp'n to Renewed TRO Mot. at 25 (citing *Jud. Watch v. Dep't of Energy*, 412 F.3d 125, 131-32 (D.C. Cir. 2005))).

Thus, discovery concerning agency DOGE teams is not just relevant but critical to understanding the scope of DOGE's authority and operations across the government.

***DOGE's Access to Agency Records Systems and Summoning of Law Enforcement.*** The DOGE EO grants DOGE sweeping and unprecedented "access to *all* unclassified agency records, software systems, and IT systems" at every executive branch agency. 90 Fed. Reg. 8441 (emphasis added). DOGE has wielded this power to access extraordinarily sensitive, statutorily-protected personal data about millions of Americans, including our social security numbers, tax return information, employment records, medical records, biometric data, and

10

more—often over agency personnel's objections. *See* ADD007-ADD008; A12-13; *Soc. Sec. Admin. v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 145 S. Ct. 1626, 1627-32 (2025) (Jackson, J., dissenting from grant of stay). Interrogatory 9, which CREW narrowed prior to the discovery order, seeks basic details about the agency systems to which DOGE has gained or sought access.

The government blithely insists that DOGE's "mere ability to access" millions of Americans' most sensitive and closely-guarded private information is "hardly 'substantial'" and thus "not relevant" to DOGE's agency status. Resp. 13, 18. That cavalier assertion is equal parts disturbing and legally wrong. As the district court explained, this Court has deemed far less consequential powers "substantial" for purposes of determining FOIA-agency status. ADD027 (citing *Soucie v. David*, 448 F.2d 1067, 1073-75 (D.C. Cir. 1971) (authority to evaluate and coordinate federal research programs); *Pac. Legal Found. v. Council on Env't. Quality*, 636 F.2d 1259, 1262 (D.C. Cir. 1980) (similar)).

The government's cursory burden objection to Interrogatory 9 fails for the same reasons as its other burden claims. *See supra.* And given DOGE's touted technological expertise, it should hardly be difficult for it

11

to determine which agency systems it has accessed or tried to access. ADD053. The government suggests DOGE's data access has been so pervasive and frantic that it has not even bothered to keep track of it. *See* Resp. 18. But, if true, that only underscores the importance of Interrogatory 9.

Equally meritless are the government's objections to Interrogatory 10 (raised for the first time on remand), which concerns DOGE personnel summoning law enforcement to compel agency compliance with their demands, including to gain access to agency systems. As the district court correctly noted, such access in the face of agency resistance would be an "especially" clear "indicator of [DOGE's] authority." A13 (citation omitted). The government offers nothing to refute that common-sense conclusion.

***DOGE's Employees, Structure, and Operations.*** The government also objects to providing basic operational details about DOGE, including its employees' identities, dates of employment, day-to-day tasks, supervisors, employers, and compensation, as well as the amount of taxpayer funding DOGE has received. Resp. 11-12. This information bears directly on DOGE's agency status under the

functional analysis of the entity's "structure" and "operations" required by this Court. *CREW*, 566 F.3d at 222, 225; *see also Armstrong v. Exec. Off. of the President*, 90 F.3d 553, 559-60 (D.C. Cir. 1996). Especially given DOGE's murky multi-agency employment arrangements, *supra*, identifying DOGE's personnel and chain-of-command is critical to evaluating what actions can be attributed to it. And it should hardly be burdensome for DOGE to produce this information, much of which agencies routinely disclose by law. *E.g.*, 5 C.F.R. § 293.311(a).

***Depositions.*** The government's objection to Acting Administrator Gleason's deposition merely rehashes its prior failed arguments, recast based on its misreading of the remand order. Ms. Gleason remains the government's sole witness, and an unreliable one at that, to DOGE's operations in support of its summary judgment motion. Her deposition, as the district court held, is necessary to answer questions raised by her sworn declarations that the government put in evidence. *See* A8-A9; Mand. Opp. 34-35; May 14 Order 2-3.

### III. This Court should, as the Supreme Court instructed, narrow the discovery order itself.

This Court should decline to have the district court narrow the discovery order in the first instance. Resp. 21-22. The Supreme Court

13

explicitly directed this Court, not the district court, to "take appropriate action to narrow the April 15 discovery order" and stayed that order "pending remanded consideration *at the Court of Appeals*." Remand Order 1-2 (emphasis added).

This mirrors the disposition in *Cheney*, where the Court left "to the Court of Appeals to address the parties' arguments with respect to the challenge to . . . the discovery orders." 542 U.S. at 391. Those and "[o]ther matters bearing on whether the writ of mandamus should issue should . . . be addressed, in the first instance, by the Court of Appeals" because "the issuance of the writ is a matter vested in the discretion of the court to which the petition is made." *Id.* So too here.

Further, when the Supreme Court wants a district court to take action following its mandamus review, it says so. *See, e.g.*, *In re United States*, 583 U.S. 29, 32 (2017) (vacating denial of mandamus petition and stating "the District Court should proceed to rule on the Government's threshold arguments" and "the Court of Appeals or the District Court in the first instance may consider whether narrower amendments to the record are necessary and appropriate"); *see also United States v. U.S. Dist. Ct. for the Dist. of Or.*, 585 U.S. 1045 (2018).

The Supreme Court's reason for not doing so here is clear: this Court's remaining work is limited and straightforward. And CREW's modifications to discovery have streamlined even that minimal work.

Having the district court narrow the discovery order, followed by near-certain review in two courts, would needlessly add further delay. Such a slowdown will only compound the accruing harm to CREW's informational rights. Mot. 8-11. As the district court held, the "rapid pace of [DOGE's] actions" demands a corresponding "quick release of information about its structure and activities" because "stale information is of little value." ADD031-34 (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)).

## CONCLUSION

CREW's motion for summary disposition should be granted.


Dated: June 30, 2025                     Respectfully submitted,

                                         */s/ Nikhel S. Sus*
                                         NIKHEL S. SUS
                                         JONATHAN E. MAIER
                                         LAUREN C. BINGHAM
                                         JOHN B. HILL
                                         DONALD K. SHERMAN
                                         Citizens for Responsibility
                                         and Ethics in Washington

P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org

*Counsel for Respondent Citizens for Responsibility and Ethics in Washington*

**CERTIFICATE OF COMPLIANCE**

      This Reply in Support of Respondent's Motion for Summary Disposition complies with the type-volume limit of Fed. Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,591 words. It also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it was prepared using word-processing software in Century Schoolbook 14-point font, a proportionally spaced typeface.

                                                  */s/ Nikhel S. Sus*
                                                  NIKHEL S. SUS

# CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, I electronically filed the foregoing Reply in Support of Respondent's Motion for Summary Disposition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Counsel in the case are registered CM/ECF users.

*/s/ Nikhel S. Sus*
NIKHEL S. SUS