**[DECISION ISSUED JULY 14, 2025]**
**No. 25-5130**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

In re U.S. DOGE SERVICE, et al.,

Petitioners.

———————————

On Petition for Writ of Mandamus to the
United States District Court for the District of Columbia

———————————

## PETITION FOR REHEARING OR REHEARING EN BANC

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney
  General*

MARK R. FREEMAN
THOMAS PULHAM
STEVEN A. MYERS
  *Attorneys, Appellate Staff
  Civil Division, Room 7232
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-8648*

## INTRODUCTION AND RULE 40(b) STATEMENT

The United States DOGE Service (USDS) is an advisory component of the Executive Office of the President. Like the National Security Council, the Domestic Policy Council, and the Council of Economic Advisors, it exists to advise and assist the President and recommend to federal agencies how they might best accomplish the President's policy goals.

Compelling close presidential advisors to disclose their documents or information would present extraordinary separation-of-powers concerns, and for that reason they are not subject to the Freedom of Information Act (FOIA). Instead, the only components of the Executive Office of the President subject to FOIA are those that have independent legal authority to do things *other* than advise and assist the President, like the Office of Management and Budget.

As the Supreme Court's order in this case confirms, an agency's FOIA status does not turn on nebulous factors like power to persuade; it is not a question of fact that turns on employees' names or timekeeping records. It is a legal question about the entity's formal authority.

Even after the district court authorized sweeping discovery aimed at determining far more than USDS's formal legal authority, a panel of this Court denied mandamus on the understanding that FOIA status turns on "the practical realities of the entity's role, not merely on its formal placement or authority within the Executive Office of the President." Order 2, May 14, 2025. The Supreme Court vacated that order, agreeing with the government that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade" and that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *U.S. DOGE Serv. v. CREW*, 145 S. Ct. 1981, 1982 (2025).

The Supreme Court remanded for this Court to narrow the inappropriately sweeping discovery. But instead of engaging with the Supreme Court's reasoning and applying it to each of plaintiff's discovery requests, the panel granted a motion for summary disposition permitting the vast majority of the discovery to go forward.

That order fails to comply with the Supreme Court's instructions, and it conflicts with precedent explaining that FOIA status turns on legal authority. Beyond that, the separation-of-powers backdrop leaves no serious question that this case is exceptionally important, as the Supreme Court signaled when it urged judicial deference and stayed discovery through disposition of a certiorari petition. Further review is warranted.

## STATEMENT

1. On January 20, 2025, the President issued Executive Order 14,158, establishing USDS within the Executive Office of the President to help carry out the President's agenda of "modernizing Federal technology and software to maximize governmental efficiency and productivity." *See* 90 Fed. Reg. 8441, 8441 (Jan. 29, 2025). The Order provides that USDS is led by the USDS Administrator, who reports to the White House Chief of Staff. *Id.* This advisory entity is distinct from DOGE teams within agencies, which are staffed by agency employees

who report to agency leadership and are tasked with "coordinat[ing]

their work with USDS." *Id.*[1]

Various other executive orders reference USDS. Executive Order

14,170 directs the Assistant to the President for Domestic Policy, "in

consultation with" the USDS Administrator, to develop a hiring plan,

"which each agency head shall implement, with advice and

recommendations as appropriate from" USDS. 90 Fed. Reg. 8621, 8621-

22 (Jan. 30, 2025). Executive Order 14,210 directs agency heads, in

consultation with DOGE team leads, to prepare other plans regarding

hiring to "eliminat[e] waste, bloat, and insularity" within the

government and requires the USDS Administrator to submit a report to

the President "regarding implementation of this order." 90 Fed. Reg.

9669, 9669-70 (Feb. 14, 2025). And Executive Order 14,218 directs the

Director of the Office of Management and Budget and the

Administrator of USDS, in coordination with the Assistant to the

President for Domestic Policy, to evaluate "sources of Federal funding

---

[1] The term "Department of Government Efficiency," or DOGE, is sometimes used to refer collectively to USDS, the "U.S. DOGE Service Temporary Organization" created within USDS, and the DOGE teams within various agencies. Exec. Order No. 14,158, 90 Fed. Reg. at 8441-42.

for illegal aliens" and to "recommend additional agency actions to align Federal spending with the purposes of this order." 90 Fed. Reg. 10,581, 10,581 (Feb. 25, 2025). Other executive orders provide directions to DOGE team leads at federal agencies but do not assign any duties to USDS. Exec. Order No. 14,219, 90 Fed. Reg. 10,583 (Feb. 25, 2025); Exec. Order No. 14,222, 90 Fed. Reg. 11,095 (Mar. 3, 2025). Collectively, these orders set forth the responsibilities assigned by the President to USDS and agency DOGE teams. USDS has no other legal authority.

**2.** This litigation arises from a FOIA request that plaintiff Citizens for Responsibility and Ethics in Washington (CREW) submitted to USDS. After the district court entered a preliminary injunction, USDS sought summary judgment on the grounds that it is not an agency subject to FOIA. Dkt. 24. Plaintiff sought discovery under Rule 56(d), Dkt. 27.

Plaintiff's proposed discovery covered large categories of information regarding both USDS and agency DOGE teams. These included a deposition of USDS Administrator Amy Gleason; a deposition of USDS pursuant to Rule 30(b)(6); information about

recommendations that USDS had made to federal agencies; information about the activities of agency DOGE teams; information about USDS employees; information about USDS's internal structure; and information about USDS's access to agency data. *See* Dkt. 27-1 (proposed discovery requests).

The district court substantially granted the discovery motion. It recognized that the relevant inquiry was whether USDS "could exercise substantial independent authority" or whether its "sole function is to advise and assist the President." Dkt. 38, at 3 (quotation marks omitted). But it reasoned that this inquiry could not be resolved solely by reference to legal instruments that created USDS because those orders were "unclear." *Id.* at 6. It also relied on evidence "in the public record"—chiefly press accounts that the court read as characterizing USDS as "leading the charge" on various government actions. *Id.* (quotation marks omitted). The court therefore granted the majority of plaintiff's requests. It ordered USDS to provide responses or objections within seven days, provide all responsive documents within 14 days, and allow the completion of depositions within 10 days after the document production.

**3.**     Facing irrelevant, burdensome, and expedited discovery into the operations of a presidential advisory body, the government sought mandamus. The panel denied the petition, agreeing with plaintiff and the district court that an entity's FOIA status "depends on the practical realities of the entity's role, not merely on its formal placement or authority." Order 2, May 14, 2025. It further found that the government had forfeited any objection premised on the separation of powers. *Id.*

The government sought relief from the Supreme Court, which granted the government's application. Most critically, the Court held that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade." *U.S. DOGE Serv. v. CREW*, 145 S. Ct. 1981, 1982 (2025). Notwithstanding the panel's suggestion that the government had forfeited the argument, the Supreme Court held that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *Id.* And it held that "[t]he portions of the District Court's April 15 discovery order that require the Government to disclose the content of intra–

Executive Branch USDS recommendations and whether those

recommendations were followed are not appropriately tailored." *Id.*

The Court thus remanded for further consideration while staying

discovery through the disposition of a certiorari petition. *See id.*

    **4.**    On remand, CREW filed a motion for summary disposition

in which it proposed to abandon seven of its discovery requests

specifically focusing on recommendations but that otherwise asked

discovery to go forward. *See* Respondent's Motion for Summary

Disposition, June 18, 2025. On July 14, 2025, the panel granted

CREW's motion, rejecting the government's contention that the

Supreme Court's order required a careful reconsideration of the

discovery to ensure that each request was consistent with the Supreme

Court's direction. *See* Order, July 14, 2025. The panel concluded that

"respondent has withdrawn the discovery requests that pertain to

'recommendations'" and that the Supreme Court's order did not

"otherwise alter this court's conclusions in previously denying

mandamus relief." *Id.* at 1.

    The result of the panel's order is that, even though the Supreme

Court held that the panel applied the wrong legal standard and

erroneously concluded that the government had forfeited its separation-of-powers arguments, USDS remains obligated to comply with the vast majority of the discovery. As modified, that discovery still includes the following:

- A deposition of USDS Administrator Amy Gleason. Discovery Requests 14.[2]

- A 30(b)(6) deposition of USDS, on topics including USDS's personnel; actions "DOGE or DOGE Teams" have undertaken with regard to federal agencies; the responsibilities of "DOGE employees detailed to or otherwise working at or with federal agencies"; and USDS's "budget, resources, funding, and expenditure of federal funds." Discovery Requests 14.

- Information about agency DOGE teams, including the identity of "members of DOGE Teams," *see* Interrogatory 1; information about how DOGE team members are supervised, *see* Interrogatory 4; information about contracts, grants, and leases that DOGE team members directed to be canceled, *see* Interrogatory 5; Request for Admission 3; information about employees or positions that DOGE team members directed to be terminated, *see* Interrogatory 7; Requests for Admission 7, 9; DOGE teams' timekeeping records, *see* Request for Production 4; directives issued by DOGE teams to federal agencies, *see* Request for Production 6; DOGE teams' mission statements, *see* Request for

---

[2] A complete copy of the discovery requests approved by the panel was attached to CREW's reply in support of its motion for summary disposition, and it is attached to this petition. Where possible, we cite to the number of the relevant request, rather than the page on which it appears.

Production 9; and other documents from within DOGE teams, *see* Request for Production 10.

- Information about USDS's employees, including their names, dates of employment, and whether they have served on detail, *see* Interrogatories 1, 2; the identity of all persons "who are or who have posted" to a social media account titled "@DOGE," Interrogatory 12; timekeeping records, *see* Request for Production 4; the identity of "all persons who oversee" USDS employees "and how they do so," Interrogatory 4; "[a]ll announcements to any DOGE employee" regarding the "appointment or departure" of a USDS Administrator, Request for Production 10; and information about the size of USDS's budget, Request for Admission 11.

- Information about access requests, including information about agency systems to which USDS employees have sought access, *see* Interrogatory 9, and information about instances in which USDS employees threatened to communicate with law enforcement, *see* Interrogatory 10.

## REASONS FOR GRANTING REHEARING

## I. The Panel's Order Conflicts With Supreme Court And Circuit Precedent Providing That Agency Status Turns On Formal Legal Authority.

The panel's order is irreconcilable with precedent from the Supreme Court and this Court setting out the test for FOIA status. As those decisions make clear, FOIA status turns on formal legal authority. It does not turn on the employees' names or timekeeping

records, and it certainly does not turn on the activities of employees of agencies falling outside that entity.

A.    FOIA applies to agencies, defined to include any "establishment in the executive branch of the Government (including the Executive Office of the President)." 5 U.S.C. § 552(f).  In adopting that language, Congress codified this Court's decision in *Soucie v. David*, 448 F.2d 1067, 1073, 1075 (D.C. Cir. 1971), which held that FOIA applied only to entities with "substantial independent authority" and not to advisory bodies that are more properly viewed as "part of the President's staff." *See Armstrong v. Executive Off. of the President*, 90 F.3d 553, 558 (D.C. Cir. 1996).  Accordingly, the Supreme Court has held that the term "'Executive Office' does not include" "the President's immediate personal staff" and "units in the Executive Office whose sole function is to advise and assist the President." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (quotation marks omitted).  "Congress exempted" such entities from FOIA "to avoid the serious separation-of-powers questions that too expansive a reading of FOIA would engender." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 216, 227 (D.C. Cir. 2013).

To determine whether an entity within the Executive Office of the President is an "agency," this Court asks one fundamental question: whether its authority extends "beyond advising" and constitutes "'substantial independent authority.'" *Meyer v. Bush*, 981 F.2d 1288, 1292 (D.C. Cir. 1993) (emphasis omitted). The Court has repeatedly answered that question by examining the formal authorities—like executive orders, statutes, or charter documents—that created the entity and set out its duties and responsibilities. *See id.* at 1293-94 (relying on "[a] careful reading of the Executive Order," "which, of course, is the most important indication of the Task Force's role"); *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1041-43 (D.C. Cir. 1985) (looking to the Council of Economic Advisers' "enumerated statutory duties"); *Sweetland v. Walters*, 60 F.3d 852, 854-55 (D.C. Cir. 1995) (per curiam) (looking to "cited sections of the U.S. Code" to determine that Executive Residence staff are not subject to FOIA); *Soucie*, 448 F.2d at 1075 (looking to "dut[ies]" "Congress … imposed"); *see also, e.g.*, *Main St. Legal Servs., Inc. v. National Sec. Council*, 811 F.3d 542, 543-44 (2d Cir. 2016) ("[W]e construe the 'agency' provision of the FOIA, the 'function' provisions of the [National Security Council]'s

statute, and the current presidential directive organizing the National Security Council System … , among other available legal sources … ." (citations omitted)); *cf. City of Arlington v. FCC*, 569 U.S. 290, 297 (2013) (noting that an agency's "power to act … is authoritatively prescribed by Congress" through statutes).[3]

**B.**     The Supreme Court's order reflects these fundamental principles.  The panel initially denied mandamus on the understanding that an entity's FOIA status "depends on the practical realities of the entity's role, not merely on its formal placement or authority."  Order 2, May 14, 2025.  But the Supreme Court resoundingly disagreed,

---

[3] Plaintiff has pointed to two cases in which the Court addressed evidence already in the record, but neither justifies the discovery ordered here.  In *Armstrong*, discovery occurred before the government raised FOIA's applicability.  *Armstrong v. Executive Office of the President*, 877 F. Supp. 690, 696-97 & n.8 (D.D.C. 1995).  And in *CREW v. Office of Admin.*, 566 F.3d 219 (D.C. Cir. 2009), the Court rejected a request for discovery of "a variety of records, including documents disclosing … organizational structure," *id.* at 225.  As the Second Circuit has noted, those cases thus do not support "sweeping discovery" to assess whether FOIA applies. *Main St. Legal Servs.*, 811 F.3d at 567-568. And such "discovery into the complete scope of the [entity's] current powers and responsibilities" is inappropriate when a plaintiff's claims are not "plausible" based on "publicly available materials."  *Id.* at 567-568 (quotation marks omitted).

explaining that an entity's FOIA status "cannot turn on [an] entity's ability to persuade." *U.S. DOGE Serv. v. CREW*, 145 S. Ct. 1981, 1982 (2025). The Supreme Court's reasoning thus reaffirms that the inquiry into FOIA status concerns actual, formal authority.

Discovery is simply not necessary to determine the extent of that authority: it can be determined from the public instruments that create USDS and describe its responsibilities. Even if any discovery were necessary, it would be limited to discovery concerning USDS's formal authority—such as any secret directives (beyond the relevant executive orders) conferring authority on USDS. *Cf. Main St. Legal Servs.*, 811 F.3d at 558 (expressing "skeptic[ism] as to whether a President can ever be said to have delegated his own authority in a way that renders it truly independent of him"). At an absolute minimum, the panel was required to reevaluate the discovery requests in light of the legal standard provided by the Supreme Court.

Had the panel done so, it would have stricken all, or at least the overwhelming majority, of the requested discovery. To know whether CREW wields "substantial independent authority," it is not necessary to know the names of people who work for USDS or agency DOGE teams,

what decisions agency DOGE teams have made, or who has posted to the @DOGE social media account. It is not necessary to see anyone's timekeeping records. It is not necessary to see DOGE teams' mission statements or organizational charts. And it is not necessary to depose Amy Gleason. The panel's refusal to limit the discovery fails to heed the Supreme Court's order.

The panel focused on the Supreme Court's statement that "[t]he portions of the District Court's April 15 discovery order that require the Government to disclose the content of intra-Executive Branch USDS recommendations and whether those recommendations were followed are not appropriately tailored," Order 1, July 14, 2025 (alteration in original) (quoting *U.S. DOGE Serv.*, 145 S. Ct. at 1982), and therefore accepted plaintiff's proposal to strike *only* those requests. But the Supreme Court's articulation of the governing legal framework was not limited to requests concerning recommendations. Although the panel contended that the government's arguments did "not otherwise alter this court's conclusions in previously denying mandamus relief," *id.*, that position is incorrect. The panel's original order rested on the notion that the FOIA inquiry "depends on the practical realities of the

15

entity's role, not merely on its formal placement or authority." Order 2, May 14, 2025. The Supreme Court necessarily rejected that view in holding that the inquiry "cannot turn on the entity's ability to persuade." *U.S. DOGE Serv.*, 145 S. Ct. at 1982. The panel's order failed to heed the Supreme Court's explanation of the governing law.

## II. The Panel's Order Conflicts With The Supreme Court's Call For "Deference And Restraint" To Protect The Separation Of Powers.

In addition to highlighting the substantive standard for agency status, the Supreme Court underscored that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." *U.S. DOGE Serv.*, 145 S. Ct. at 1982. That conclusion flowed from the Supreme Court's decision in *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004), which notes the "'high respect that is owed to the office of the Chief Executive'" in the conduct of litigation, such that discovery against the Office of the President must be reserved for the most exceptional of circumstances. *See id.* at 385-92. The panel's ruling is inconsistent with those essential principles.

**A.**     Because an entity's FOIA status turns on formal legal authority, there is no need for depositions.  But even if there were a basis for some depositions, a deposition of the USDS Administrator is inappropriate.  To the contrary, depositions of high-ranking officials like Ms. Gleason should not be permitted "absent extraordinary circumstances." *Simplex Time Recorder Co. v. Secretary of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985).  The reason is obvious:  "the compelled appearance of a high-ranking officer of the executive branch in a judicial proceeding implicates the separation of powers." *In re United States*, 624 F.3d 1368, 1372 (11th Cir. 2010); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 703 (9th Cir. 2022) (emphasizing that a judicial order allowing the deposition of a current or former high-ranking Executive Branch official threatens to "disrupt the normal governmental balance of powers").  To date, neither plaintiff, nor the district court, nor the panel has articulated a satisfactory explanation of why Ms. Gleason's deposition is necessary.[4]

---

[4] The district court noted that Ms. Gleason submitted a declaration in support of USDS's summary judgment motion, *see* Dkt. 38, at 8, but that short declaration was limited to describing the instruments that formally create USDS and set out its authorities, Dkt.

*Continued on next page.*

**B.** CREW seeks voluminous information about agency DOGE teams—to whom individuals on these teams report, what directives those individuals have issued, how these individuals report their time, etc. *See supra* pp. 9-10. These are all questions about the identities and activities of employees of federal agencies. They might shed light on what authority those agencies were exercising but would not reveal anything about USDS.

Because USDS frequently interacts with DOGE teams in an advisory capacity, various individuals at USDS would likely have some information responsive to these requests. But USDS does not have a central repository of all of this information. Instead, any responsive information that USDS possesses would exist because some USDS employees have picked it up in piecemeal fashion through interactions with the rest of the Executive Branch, such as by being included on emails discussing agency activities. Searching for responsive information would thus require looking across the entirety of USDS.

---

24-2. Indeed, plaintiff itself complained that the declaration was "cursory" and observed that the government "only cite[d]" it "a handful of times," mainly to refer to the "executive orders." Dkt. 27, at 2, 18 n.3.

Those would be extremely difficult and time-consuming searches to perform, and such searches could not possibly produce anywhere near comprehensive information about all agency DOGE teams. Requiring a presidential advisory body to conduct such needle-in-a-haystack searches thus fails to reflect appropriate "deference and restraint." *U.S. DOGE Serv.*, 145 S. Ct. at 1982.

**C.** Certain of CREW's requests seek information about instances in which USDS sought access to agency systems or facilities. Those requests are not relevant to USDS's authority. Moreover, the government has previously explained that it does not maintain a repository of agency systems to which particular individuals have sought access. *See* Dkt. 34, at 20. Attempting to reverse-engineer such information would require review of emails across USDS, a burdensome and largely ineffective imposition that distracts USDS from its duties as a presidential advisory body.

## III. The Panel's Ruling Presents An Extraordinarily Important Threat To The Separation Of Powers.

In addition to the fact that the panel's order conflicts with Supreme Court and Circuit precedent, the separation-of-powers backdrop leaves no doubt that this case is exceptionally important.

Congress shielded senior presidential advisors from FOIA's reach precisely to avoid the separation-of-powers concerns associated with compelling such advisors to disclose documents or information. *See Judicial Watch*, 726 F.3d at 227. A proper respect for the separation of powers compels the conclusion USDS, like other advisory components of the Executive Office of the President that lack independent authority, is not subject to FOIA. The panel's insistence that factors other than formal legal authority might render a presidential advisory body subject to FOIA fails to respect the separation of powers.

Even if courts ultimately hold that USDS is not subject to FOIA, that will be a hollow victory if USDS must first disclose information through the discovery process and therefore trigger the very concerns that justify its exemption from the statute. Indeed, here plaintiff would obtain more information through discovery than it ever sought under FOIA. Supreme Court precedent—including in this case—makes clear that any discovery must be narrowly tailored to respect the separation of powers. *See Cheney*, 542 U.S. at 385-92; *U.S. DOGE Serv.*, 145 S. Ct. at 1982. The panel's failure to appropriately tailor discovery even after

being reminded of its obligation to do so further threatens the separation of powers.

## CONCLUSION

The Court should grant rehearing or rehearing en banc.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC D. McARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
THOMAS PULHAM

/s/ Steven A. Myers
STEVEN A. MYERS
*Attorneys, Appellate Staff*
*Civil Division, Room 7232*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 305-8648*
*Steven.A.Myers@usdoj.gov*

August 2025

**CERTIFICATE OF COMPLIANCE**

I certify that this petition complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,894 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the count of Microsoft Word.

*/s/ Steven A. Myers*

Steven A. Myers

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Steven A. Myers*
Steven A. Myers

# ADDENDUM

# TABLE OF CONTENTS

*In re U.S. DOGE Serv.,*
No. 25-5130 (D.C. Cir. July 14, 2025) ................................................. Add. 1

Revised Attachment B to CREW's Reply in Support of Motion
for Summary Disposition (June 30, 2025) ....................................... Add. 3

Certificate as to Parties, Rulings, and Related Cases ................... Add. 18

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

**No. 25-5130**                                    **September Term, 2024**

**1:25-cv-00511-CRC**

**Filed On:** July 14, 2025

In re: U.S. DOGE Service, et al.,

      Petitioners

 

**BEFORE:**    Henderson, Wilkins, and Childs, Circuit Judges

### O R D E R

Upon consideration of the Supreme Court's order and judgment granting the petition for certiorari, vacating this court's May 14, 2025, order, and remanding for further consideration; the petition for writ of mandamus, the opposition thereto, and the reply; the motion for stay, the opposition thereto, and the reply; and the motion for summary disposition, the opposition thereto, and the reply, it is

**ORDERED** that the mandamus petition be granted in part and denied in part. The petition is granted to the extent that the district court's April 15, 2025, order requires petitioners to serve responses and objections to Interrogatories Nos. 6 and 8 and Requests for Admission Nos. 2, 4, 6, 8, and 10. The district court is directed to modify its April 15 order to exclude those interrogatories and requests. In all other respects, the petition is denied.

The Supreme Court determined that "[t]he portions of the District Court's April 15 discovery order that require the Government to disclose the content of intra–Executive Branch USDS recommendations and whether those recommendations were followed are not appropriately tailored." <u>U.S. DOGE Serv. v. CREW</u>, 145 S. Ct. 1981, 1982 (2025). The Court explained that "[a]ny inquiry into whether an entity is an agency for the purposes of the Freedom of Information Act cannot turn on the entity's ability to persuade," and that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch communications." <u>Id.</u> The Court's order directed this court to "take appropriate action to narrow the April 15 discovery order consistent with [the Court's] order." <u>Id.</u>

In moving for summary disposition, respondent has withdrawn the discovery requests that pertain to "recommendations" made by U.S. DOGE Service employees and others—specifically, Interrogatories Nos. 6 and 8 and Requests for Admission Nos. 2, 4, 6, 8, and 10. Excluding those interrogatories and requests will narrow the district court's April 15 discovery order consistent with the Supreme Court's order. Petitioners' arguments in opposition to the summary disposition motion do not otherwise alter this court's conclusions in previously denying mandamus relief. It is

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 25-5130**                                                      **September Term, 2024**


**FURTHER ORDERED** that the administrative stay entered on April 18, 2025, be dissolved, and the motion for stay be dismissed as moot.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.


**Per Curiam**


**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:     /s/
Selena R. Gancasz
Deputy Clerk

Revised Attachment B

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 1:25-cv-511 |
| U.S. DOGE SERVICE, *et al.*, | |
| Defendants. | |

## PLAINTIFF'S [PROPOSED] FIRST DISCOVERY REQUESTS

Pursuant to Federal Rule of Civil Procedure 26, 33, 34, and 36, and Local Civil Rule 26.2, Defendants U.S. DOGE Service and the Administrator of the U.S. DOGE Service are requested to answer and respond to the following interrogatories, requests for admission, and requests for production (collectively, the "Discovery Requests") propounded by undersigned counsel for Plaintiff Citizens of Responsibility and Ethics in Washington ("CREW") separately and fully, in writing, under oath, to the best of your ability from knowledge you are able to obtain from any and all sources available to you, your agents, or your attorneys, and respond to these discovery requests as follows:

- Serve written responses and any objections to these Discovery Requests within 7 days of the Court's order granting discovery;

- Produce all responsive documents to Plaintiffs' request for production within 14 days of the Court's order granting discovery; and

- Complete all depositions within 10 days from the deadline for producing documents.

Add.4

## <u>INSTRUCTIONS</u>

1. These instructions and definitions apply to each of the Discovery Requests and should be construed to require answers based upon the knowledge of, and information available to, the responding party as well as its agents, representatives, and, unless privileged, attorneys.

2. It is intended that the following Discovery Requests will not solicit any information protected either by the attorney/client privilege or work product doctrine which was created or developed by counsel for the responding party after the date on which this litigation was commenced.

3. These Discovery Requests are continuing in character, so as to require that supplemental answers be filed if further or different information is obtained with respect to any request, and documents and tangible things sought by these requests that you obtain or discover after you serve your answers must be produced to counsel for Plaintiff by supplementary answers or productions.

4. No part of a Discovery Request should be left unanswered merely because an objection is interposed to another part of the request. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

5. With respect to document requests, requests extend to all documents in your possession, custody or control, or of anyone acting on your behalf. A document is in your possession, custody or control if it is in your physical custody or if it is in the physical custody of any other person and you:

   a. own such document in whole or in part;

   b. have a right, by contract, statute or otherwise, to use, inspect, examine, or copy such document on any terms;

   c. have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or

   d. have, as a practical matter, been able to use, inspect, examine, or copy such document when you sought to do so.

6. The documents produced in response to these requests shall be (i) organized and designated to correspond to the categories in these requests, or (ii) produced as they are maintained in the normal course of business.

7. If a document called for by these requests has been destroyed, lost, discarded, or otherwise disposed of, identify such document as completely as possible including, without limitation, the following information: author(s), recipient(s), sender(s), subject matter, date prepared or received, date of disposal, manner of disposal, reason for disposal, person(s) authorizing the disposal, person(s) having knowledge of the disposal and person(s) disposing of the document.

8. In the event that more than one copy of a document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy, or any copy containing attachments different from any other copy.

9. Produce all documents in their entirety, without abbreviation or redaction, including both front and back thereof and all attachments or other matters affixed thereto.

10. Pursuant to Rule 33(b)(2)(B), Rule 34(b)(2)(B), and Rule 36(a)(5), if you object to a request, the grounds for each objection must be stated with specificity. Also pursuant to Rule 33 and Rule 34, if you intended to produce copies of documents or of ESI instead of permitting inspection, you must so state.

11. Pursuant to Rule 33(b)(2)(B), Rule 34(b)(2)(C), and Rule 36(a)(5) an objection must state whether any responsive information or materials are being withheld on the basis of that objection.

12. Whenever in these requests you are asked to identify or produce a document which is deemed by you to be properly withheld from production for inspection or copying:

    a. If you are withholding the document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5).  For electronically stored information, a privilege log (in searchable and sortable form, such as a spreadsheet, matrix, or table) generated by litigation review software, containing metadata fields that generally correspond to the above paragraph is permissible, provided that it also discloses whether transmitting, attached or subsidiary ("parent-child") documents exist and whether those documents have been produced or withheld.

    b. If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery, identify as to each document and, in addition to the information requested in paragraph 4.A, above, please state the reason for withholding the document.  If you are withholding production on the basis that ESI is not reasonably accessible because of undue burden or cost.

13. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration.  Any redaction must be clearly visible on the redacted document.

14. In accordance with Fed. R. Civ. P. 26(b)(5), where a claim of privilege is asserted in objecting to any interrogatory or request for admission or part thereof, and information is not provided on the basis of such assertion:

3
Add.6

   a. In asserting the privilege, the responding party shall, in the objection to the interrogatory or request for admission, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed.

   b. The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

      i. For oral communications:

         1. the name of the person making the communication and the names of persons present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication;

         2. the date and place of the communication; and

         3. the general subject matter of the communication.

      ii. For documents:

         1. the type of document,

         2. the general subject matter of the document,

         3. the date of the document, and such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

15. If, in answering these Discovery Requests, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

16. Nothing in these Discovery Requests should be construed to apply to the President of the United States or direct communications with the President.

## **DEFINITIONS**

   Notwithstanding any definition below, each word, term, or phrase used in these Discovery Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

1. *DOGE*: The term "DOGE" refers collectively to (1) Defendant United States DOGE Service, established by Executive Order 14158, "Establishing and Implementing the President's 'Department of Government Efficiency,'" on January 20, 2025; (3) the U.S. DOGE Service Temporary Organization ("DOGE Temporary Organization") described in Executive Order 14158; and (3) any agent, unit, or component of the foregoing.

4
Add.7

2. *Administrator:* The term "Administrator" means any person appointed to be the Administrator of the United States DOGE Service as established in Executive Order 14158, including any person appointed to that position on a temporary, interim, or acting basis.

3. *Federal agency*: The term "federal agency" refers to any entity of the United States government, whether executive, legislative, or judicial.

4. *Communication:* The term "communication" means the transmittal of information by any means.

5. *Document:* The terms "document" and "documents" are synonymous in meaning and equal in scope to the term "items" in Fed. R. Civ. P. 34(a)(1) and include, but are not limited to, electronically stored information. The terms "writings," "recordings," and "photographs" are defined to be synonymous in meaning and equal in scope to the usage of those terms in Fed. R. Evid. 1001. A draft or non-identical copy is a separate document within the meaning of the term "document." *However*, for purposes of these requests only, while the term "document" includes electronically stored information, it does not, unless the specific request indicates otherwise, include emails, text messages, or any similar electronically exchanged communication, except that documents should not be excluded from your response merely because they may be otherwise attached to such communications.

6. *DOGE Team*: The term "DOGE Team" is synonymous in meaning and equal in scope to the term "DOGE Team" in Executive Order 14158.

7. *Employee*: The term "employee" means any person who is authorized to perform or actually performs work on behalf of any entity or agency–including, for the avoidance of doubt, DOGE–regardless of their formal employment classification, whether they are a detailee from another agency, or are providing services on a volunteer basis. The term includes any employee who is detailed or employed elsewhere, so long as that employee continues in any role in the agency in which they are an employee. The term also includes the actual or de facto leader of an entity or agency (e.g., the DOGE Administrator is an "employee" of DOGE).

8. *Federal record:* The term "federal record" is synonymous in meaning and equal in scope to the term "record" in 44 U.S.C. § 3301.

9. *Identify (with respect to persons)*: When referring to a person, to "identify" means to state the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. If telephone numbers are known to the answering party, and if the person is not a party or present employee of a party, said telephone numbers shall be provided. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

10. *Identify (with respect to documents):* When referring to documents, to "identify" means to state the: (i) type of document; (ii) general subject matter; (iii) date of the document;

and, (iv) author(s), addressee(s), and recipient(s) or, alternatively, to produce the document.

11. *Location*: The term "location" means, for electronic documents and communications, the device, server, or medium on which those documents and communications are stored or maintained, as well as where any such device, server, or medium can be found. For documents in non-electronic form, the term "location" means where and in whose possession the documents can be found.

12. *Person*: The term "person" means any natural person or any business, legal or governmental entity or association, or their agents. Requests seeking the identification of a "person" seek the person's name.

13. *Relating to:* The term "relating to" means concerning, referring to, describing, evidencing, or constituting.

14. *You/Your:* The terms "You" or "Your" include the person(s) to whom these requests are addressed, and all of that person's agents, representatives, and attorneys.

15. The present tense includes the past and future tenses.  The singular includes the plural, and the plural includes the singular.  "All" means "any and all;" "any" means "any and all."  "Including" means "including but not limited to."  "And" and "or" encompass both "and" and "or."  Words in the masculine, feminine, or neuter form include each of the other genders.

16. If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

6

Add.9

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**
**TO DEFENDANTS U.S. DOGE SERVICE AND ADMINISTRATOR OF THE U.S.**
**DOGE SERVICE**

**INTERROGATORY NO. 1:** Identify all current and former employees of DOGE and members of DOGE Teams and, for each such person, the dates of their employment, their positions, whether they are paid, to whom they directly report, whether they are employed by DOGE, the DOGE Temporary Organization, or a federal agency, under whose authority they were hired or their volunteer services accepted, and whether they have independent access to DOGE office space in the Eisenhower Executive Office Building.

**RESPONSE:**

**INTERROGATORY NO. 2:** Identify any current or former employees of DOGE who have been detailed to other federal agencies or have simultaneously been employees of DOGE and a federal agency, and, for each such employee, the agencies to which they have been detailed or by which they have simultaneously been employed, their positions and duties at those agencies, and any duties they have retained at DOGE during their detail or simultaneous employment.

**RESPONSE:**

**INTERROGATORY NO. 3:**

[STRUCK BY DISTRICT COURT]

**INTERROGATORY NO. 4:** Identify all persons who oversee, supervise, or exercise authority over the conduct of DOGE employees, DOGE Teams, or any affiliates thereof, and how they do so, including any dedicated staff or systems to facilitate such oversight, any recurring reports that DOGE employees and DOGE Team members are required to submit, and any DOGE employees who are exempt from those systems or reports. As part of this response, identify all persons who have the authority to hire, terminate, or detail DOGE employees, or who have actually taken such actions, since January 20, 2025.

**RESPONSE:**

**INTERROGATORY NO. 5:** Identify each federal agency contract, grant, lease, or similar instrument that any DOGE employee or DOGE Team member directed federal agencies to cancel or rescind since January 20, 2025.

**RESPONSE:**


**INTERROGATORY NO. 6:**

[WITHDRAWN]


**INTERROGATORY NO. 7:** Identify each federal agency employee or position that any DOGE employee or DOGE Team member directed federal agencies to terminate or place on administrative leave since January 20, 2025.

**RESPONSE:**


**INTERROGATORY NO. 8:**

[WITHDRAWN]


**INTERROGATORY NO. 9:** Identify any of the following systems which, since January 20, 2025, any DOGE employee has attempted to gain, has planned to gain, or plans to gain access, and whether access was obtained: any system that stores classified information, requires a security clearance prior to access, or is housed in a sensitive compartmented information facility, 2) any system used to store non-public and non-anonymized information regarding individuals, including but not limited to any person's social security number, contact information, financial information, health information, employment or employment applications, criminal histories, immigration or citizenship status, tax information, or security clearances, 3) any system utilized to store information regarding criminal investigations, and 4) any system utilized to control or facilitate spending, including payment systems or human resources/capital management at any federal agency.

**RESPONSE:**

**INTERROGATORY NO. 10:** Describe all instances in which any DOGE employee told an employee of a federal agency that the DOGE employee would or could call law enforcement in response to the other employee's conduct, including who made such statement, the federal agency and conduct of the federal agency employee at issue, the law enforcement entity referenced, and, if the law enforcement was called, who made the call and law enforcement's response.

**RESPONSE:**

**INTERROGATORY NO. 11:**

[STRUCK BY DISTRICT COURT]

**INTERROGATORY NO. 12:** Identify all persons who are or who have posted or authored posts to the @DOGE X account since January 20, 2025.

**RESPONSE:**

**INTERROGATORY NO. 13:** For each Request for Admission served concurrently with these interrogatories, explain the basis for Defendants' response, including the basis of any partial or full denial, for any request not fully admitted.

**RESPONSE:**

9

## PLAINTIFF'S FIRST REQUESTS FOR ADMISSION
## TO DEFENDANTS U.S. DOGE SERVICE AND ADMINISTRATOR OF THE U.S. DOGE SERVICE

**REQUEST FOR ADMISSION NO. 1:** Admit that since January 20, 2025, DOGE employees have directed federal agencies to cancel contracts, grants, or leases.

Admit: _____          Deny: _____

**REQUEST FOR ADMISSION NO. 2:**

[WITHDRAWN]

**REQUEST FOR ADMISSION NO. 3:** Admit that since January 20, 2025, DOGE Team members have directed federal agencies to cancel contracts, grants, or leases.

Admit: _____          Deny: _____

**REQUEST FOR ADMISSION NO. 4:**

[WITHDRAWN]

**REQUEST FOR ADMISSION NO. 5:** Admit that since January 20, 2025, DOGE employees have directed changes in the employment status of employees of federal agencies.

Admit: _____          Deny: _____

**REQUEST FOR ADMISSION NO. 6:**

[WITHDRAWN]

**REQUEST FOR ADMISSION NO. 7:** Admit that since January 20, 2025, DOGE Team members have directed changes in the employment status of employees of federal agencies.

Admit: _____          Deny: _____

**REQUEST FOR ADMISSION NO. 8:**

[WITHDRAWN]

**REQUEST FOR ADMISSION NO. 9:** Admit that since January 20, 2025, DOGE Team members have directed federal agencies to keep open vacancies in career positions.

Admit: _____          Deny: _____

**REQUEST FOR ADMISSION NO. 10:**

10

Add.13

[WITHDRAWN]

**REQUEST FOR ADMISSION NO. 11:** Admit that since January 20, 2025, the Office of Management and Budget has apportioned over $41 million to the "United States DOGE Service" account.

Admit: _____          Deny: _____

**PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS U.S. DOGE SERVICE AND ADMINISTRATOR OF THE U.S. DOGE SERVICE**

**REQUEST NO. 1:** All Interagency Agreements or Memoranda of Understanding, from January 20, 2025 to the present, between DOGE and federal agencies.

**REQUEST NO. 2:**

[STRUCK BY DISTRICT COURT]

**REQUEST NO. 3:** All general terms and conditions invoices, commonly referred to as G-invoices, concerning DOGE-related work performed from January 20, 2025 to the present.

**REQUEST NO. 4:** All timekeeping records for any DOGE employee or DOGE Team member reflecting DOGE-related work.

**REQUEST NO. 5:** All final directives, or announcements of final directives, from any DOGE employee to any DOGE Team or federal agency, including such directives or announcements made by electronic messages such as email, signal message, X direct message, or text message.

**REQUEST NO. 6:** All final directives, or announcements of final directives, from any DOGE Team to any federal agency, including such directives or announcements made by electronic messages such as email, signal message, X direct message, or text message.

**REQUEST NO. 7:** All entity-wide final directives, or announcements of final directives, sent by any current or former Administrator to any DOGE employee or DOGE Team member since January 20, 2025, including such directives or announcements made by electronic messages such as email, signal message, X direct message, or text message.

**REQUEST NO. 8:** Any documents formalizing DOGE's organization, structure, reporting lines, operational units or divisions, or authority with respect to federal agencies.

**REQUEST NO. 9:** Any mission statement, memorandum, guidance, or other final records delineating the scope of DOGE's or any DOGE Team's authorities, functions, or operations.

**REQUEST NO. 10:** All announcements to any DOGE employee or DOGE Team regarding the appointment or departure of any Administrator from January 20, 2025 to the present, including such announcements made by electronic messages such as email, signal message, X direct message, or text message.

**REQUEST NO. 11:** All documents, including responses, produced in response to Plaintiff States' First Set of Written Discovery in *New Mexico v. Musk*, No. 1:25-cv-429 (D.D.C. filed February 13, 2025), and the consolidated case *Japanese American Citizens League v. Musk*, 1:25-cv-643 (D.D.C. filed Mar. 5, 2025), including copies of Defendants' answers to all requests for production, interrogatories, and requests for admission, including objections, as well as any exhibits, attachments, logs, files, or other things produced in response to Plaintiff States' requests in that case, as well as any deposition transcripts produced.

12

Add.15

**REQUEST NO. 12:** All documents, including responses, produced in response to Plaintiff States' First Set of Written Discovery in *AFL-CIO v. Department of Labor*, No. 1:15-cv-339 (D.D.C. filed Feb. 5, 2025), including copies of Defendants' answers to all requests for production, interrogatories, and requests for admission, including objections, as well as any exhibits, attachments, logs, files, or other things produced in response to Plaintiffs' requests in that case, as well as any deposition transcripts produced.

**REQUEST NO. 13:** All "direct messages" sent by the @DOGE X account relaying any final directives to a federal agency from January 20, 2025 to the present.

**REQUEST NO. 14:**

[STRUCK BY DISTRICT COURT]

13

Add.16

**DEPOSITIONS**

Plaintiff seeks the depositions of the following DOGE employees:

- Amy Gleason

- [STRUCK BY DISTRICT COURT]

Plaintiff also seeks a deposition of DOGE under Fed. R. Civ. P. 30(b)(6) on the following topics:

1. DOGE's establishment, mission, responsibilities, personnel, leadership structure, authorities, and decision-making and reporting structure (including the relationship of DOGE to DOGE Teams and DOGE employees detailed to or otherwise working at or with federal agencies and the relationship of DOGE Teams to federal agencies) between January 20, 2025 and the date of deposition.

2. The scope of DOGE's and DOGE Teams' authority with regard to federal agencies, and actions DOGE or DOGE Teams have actually undertaken with regard to federal agencies, between January 20, 2025 and the date of deposition.

3. The role and responsibilities of all DOGE employees detailed to or otherwise working at or with federal agencies, or having supervisory authority over DOGE employees detailed to or otherwise working at or with federal agencies, between January 20, 2025 and the date of deposition, including their titles at DOGE and any federal government entity; their responsibilities at federal agencies, DOGE, and any other federal government entities to which they have been detailed and/or otherwise assigned; their authority with regard to other federal agency staff; the supervision of said DOGE employees; and the policies, procedures, and protocols pertaining to their detailing to and activities at other federal agencies.

4. DOGE's budget, resources, funding, and expenditure of federal funds.

5. [STRUCK BY DISTRICT COURT]

14

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

## A.    Parties and Amici

Petitioners are the U.S. DOGE Service; Amy Gleason, in her official capacity as Administrator of the U.S. DOGE Service; Elon Musk, in his official capacity;[5] the Office of Management and Budget; Russell T. Vought, in his official capacity as Director, Office of Management and Budget; National Archives and Record Administration; and Marco Rubio, in his official capacity as Acting Archivist of the United States.

## B.    Rulings Under Review

The ruling under review is a per curiam order granting in part and denying in part the government's mandamus petition, *see* Order, *In re U.S. DOGE Serv.*, No. 25-5130 (D.C. Cir. July 14, 2025).  The government's mandamus petition concerned the district court's (Cooper, J.) memorandum opinion and order of April 15, 2025 (Dkt. 38) granting

---

[5] At the time the petition was filed, Elon Musk served as a senior advisor to the President in the White House Office.  He no longer serves in that position.

in part the plaintiffs' motion for expedited discovery.  The district court's order is reported at 349 F.R.D. 1.

## C.    Related Cases

This case has not previously been before this Court or any other court, and there are no related cases pending in this Court or any other court.

/s/ Steven A. Myers
Steven A. Myers